48 Cal.4th 760 (2010)
L. RICHARD RUNYON, Plaintiff and Appellant,
v.
BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY et al., Defendants and Respondents.
No. S168950.
Supreme Court of California.
May 3, 2010.
*762 Ganz & Gorsline, Philip J. Ganz, Jr., and Laurie Susan Gorsline for Plaintiff and Appellant.
Schoville & Arnell, Dennis A. Schoville, Louis G. Arnell; Boudreau Williams and Jon R. Williams for David Ohton as Amicus Curiae on behalf of Plaintiff and Appellant.
Law Office of David J. Duchrow; David J. Duchrow; Law Offices of Marc Coleman and Marc Coleman for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.
Horvitz & Levy, Jeremy B. Rosen, James A. Sonne; Goldman, Magdalin & Krikes and Robert W. Conti for Defendants and Respondents.

OPINION
WERDEGAR, J. 
When an employee of the California State University (CSU) claims he or she suffered retaliation for making a protected disclosure *763 under the California Whistleblower Protection Act (the Act) (Gov. Code, § 8547 et seq.),[1] and CSU, after an internal investigation, rejects the employee's claim of retaliation, must the employee obtain a writ of mandate overturning CSU's decision before he or she may bring an action for damages under section 8547.12? We hold CSU employees, like employees of state boards and agencies (see State Bd. of Chiropractic Examiners v. Superior Court (2009) 45 Cal.4th 963, 978 [89 Cal.Rptr.3d 576, 201 P.3d 457]), need not exhaust the judicial remedy of a mandate petition before pursuing the judicial remedy for which the Act expressly provides, an action for damages.

PROCEDURAL BACKGROUND
Because the issues before us are entirely procedural, we will not rehearse here the factual details of plaintiff's complaint or the evidence for and against those allegations presented in connection with defendants' summary judgment motion. In brief, plaintiff, a tenured professor in the College of Business Administration at CSU Long Beach, was chair of that college's Finance, Real Estate and Law Department from 1991 until 2004, when defendant Luis Ma Calingo, dean of the College of Business Administration, removed him from the chairmanship.
In October 2004, plaintiff filed a complaint with CSU's vice-chancellor of human resources against CSU and Dean Calingo, alleging he had been removed as departmental chair and subjected to other adverse actions in retaliation for his having reported improper conduct by Calingo. Pursuant to CSU's established procedures for resolving whistleblower complaints, Ellen Bui, a CSU human resources manager, was designated to investigate the complaint.[2] In March 2005, Bui provided a summary of her investigation and *764 conclusions to the vice-chancellor of human resources, who forwarded a copy to plaintiff. Bui concluded the revelations plaintiff claimed to have made regarding Dean Calingo's wrongdoing did not qualify as protected disclosures under the Act; that plaintiff did suffer an adverse employment action in being removed from the chairmanship of his department (a position that carried an increased salary and stipend); but that Calingo had removed plaintiff as departmental chair because plaintiff had made inadequate progress toward an expected review of the department's curriculum, rather than in retaliation for plaintiff's complaints and accusations against him.
In a written response, plaintiff took issue with many of Bui's conclusions. In particular, plaintiff argued Dean Calingo's stated reason for removing himhis failure to meet expectations regarding a curriculum review processwas pretextual. In an April 2005 letter of determination from the vice-chancellor of human resources, however, CSU decided that, while plaintiff had made a protected disclosure in complaining about Dean Calingo's habitual absence from campus, he had not been removed as chair because of that disclosure, but for having what the dean considered an inadequate curriculum review process.
Plaintiff then filed this action for damages against CSU and Calingo, alleging retaliation in violation of section 8547.12. The trial court granted defendants' motion for summary judgment on two grounds. First, subdivision (c) of section 8547.12 authorizes a civil action only if CSU "has failed to reach a decision" within the time set by its internal procedures.[3] While the subdivision goes on to say that it does not bar an action if CSU has not "satisfactorily addressed" the complaint within 18 months, the trial court interpreted that language as meaning only that CSU is subject to a civil action if it fails to reach a decision within the stated timeframe, a condition not met here. Second, the court held plaintiff was required to successfully challenge *765 CSU's decision by writ of mandate, whether administrative (Code Civ. Proc., § 1094.5) or ordinary (id., § 1085), before bringing an action for damages; plaintiff, that is, failed to exhaust his judicial remedies.
The Court of Appeal affirmed. Relying on Ohton v. Board of Trustees of California State University (2007) 148 Cal.App.4th 749 [56 Cal.Rptr.3d 111] (Ohton), the court rejected plaintiff's contention that by denying his claim of retaliation CSU failed to "satisfactorily address[]" his whistleblower complaint; the quoted language, the Court of Appeal held, did not mean "`addressed to the satisfaction of the employee.'" At the same time, again following Ohton, the court rejected CSU's interpretation (adopted by the superior court here), under which "satisfactorily addressed" would mean simply "`timely rendered.'" Rather, the appellate court here opined, "[a]t minimum, the phrase must mean a thorough investigation of whistleblower claims of retaliation, conducted in good faith, consistent with the spirit and purpose of the California Whistleblower Protection Act."
The Court of Appeal further held summary judgment for the defense was proper because plaintiff had not, before bringing his action for damages, "successfully establish[ed] through a writ proceeding that his claim had not been `satisfactorily addressed' ...." Reversal of an adverse CSU decision through a proceeding for writ of mandate, the appellate court concluded, is a prerequisite for pursuing an action for damages under section 8547.12, subdivision (c).
We granted plaintiff's petition for review.

DISCUSSION
We are required here to determine the procedural prerequisites for bringing an action for damages under section 8547.12, subdivision (c), and in particular to decide whether, when CSU has reached a final administrative decision adverse to the alleged whistleblower, he or she must, before bringing a damages action, demonstrate through a petition for writ of mandate that CSU failed to "satisfactorily address[]" the internal complaint. To decide that we must also decide what the quoted statutory phrase means.
While this court has not previously addressed either question, we have recently faced parallel issues arising under related parts of the Act.
Subdivision (c) of section 8547.10, which authorizes an action for damages by an employee of the University of California alleging retaliation for a protected disclosure, provides that the action is not available unless the employee has made an internal complaint "and the university has failed to *766 reach a decision regarding that complaint" within the applicable time limit. This subdivision of section 8547.10 closely matches the corresponding part of section 8547.12, except that it does not contain the latter's last sentence: "Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months." (§ 8547.12, subd. (c).)
In Miklosy v. Regents of University of California (2008) 44 Cal.4th 876 [80 Cal.Rptr.3d 690, 188 P.3d 629] (Miklosy), we interpreted subdivision (c) of section 8547.10 according to its plain language, explaining, "a civil action for damages against the University is available only when the plaintiff employee has first filed a complaint with the University and the University has failed to reach a timely decision on the complaint." (Miklosy, at p. 898.) If, conversely, the University of California "has reached a timely decision in its own favor, then it has not `failed to reach a decision'" (id. at p. 888), and no action is authorized under section 8547.10.[4] Although in Miklosy we discussed other provisions of the Act, including section 8547.12, subdivision (c), we explicitly reserved judgment on the meaning of the phrase "satisfactorily addressed" in that subdivision. (Miklosy, at p. 886.)
A third textual variation is found in subdivision (c) of section 8547.8, which authorizes a whistleblower retaliation action by a state agency employee.[5] That subdivision provides no such action is available unless the employee has filed a complaint with the State Personnel Board and that board "has issued, or failed to issue, findings" on the complaint. In State Bd. of Chiropractic Examiners v. Superior Court, supra, 45 Cal.4th 963 (hereafter Arbuckle), we relied in part on this language to hold that a state agency employee was not required to overturn adverse State Personnel Board findings through a writ of mandate before bringing an action for damages. "[T]he Legislature expressly authorized a damages action in superior court for whistleblower retaliation (§ 8547.8(c)), and in doing so it expressly acknowledged the existence of the parallel administrative remedy. It did not require that the board's findings be set aside by way of a mandate action; rather, it gave as the only precondition to the damages action authorized in *767 section 8547.8(c), that a complaint be filed with the board and that the board `issue[], or fail[] to issue, findings.'" (Arbuckle, at p. 976.)
With this background on our prior constructions of the Act's provisions, we proceed to consider the proper interpretation of section 8547.12, subdivision (c).

I. Meaning of "satisfactorily addressed"

(1) "We begin with the statutory language, viewed in light of the entire legislative scheme of which it is a part, as the language chosen is usually the surest guide to legislative intent. (In re Corrine W. [(2009)] 45 Cal.4th [522,] 529 [87 Cal.Rptr.3d 691, 198 P.3d 1102].) To the extent we find the statutory language susceptible of more than one reasonable interpretation, we examine other sources, including the history of the provision's enactment, for insight into the Legislature's intent. (Ibid.; Elsner v. Uveges (2004) 34 Cal.4th 915, 929 [22 Cal.Rptr.3d 530, 102 P.3d 915].)" (Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 670 [94 Cal.Rptr.3d 685, 208 P.3d 623].)
For ease of reference, we repeat here the pertinent statutory language. Section 8547.12, subdivision (c) authorizes alleged CSU whistleblowers to bring actions for damages, but provides: "However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the university officer identified pursuant to subdivision (a), and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the trustees. Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months."
The parties agree these two sentences authorize an alleged whistleblower to bring an action for damages if CSU has either "failed to reach a decision" on the employee's internal complaint within the administrative time limit or has "not satisfactorily addressed the complaint" within 18 months. Put another way, a civil action is precluded only if CSU has reached a timely decision and has done so in a way that satisfactorily addresses the complaint. The parties disagree, however, as to what is meant by the condition that CSU has failed to "satisfactorily address[]" an alleged whistleblower's internal complaint.
Plaintiff, as he has throughout the litigation, contends that the quoted phrase refers to the satisfaction of the complaining party, the alleged whistleblower. Under this interpretation, CSU employees, like state agency employees under section 8547.8, may file an action for damages if CSU either fails to reach a timely decision or reaches a timely but adverse decision on their complaint.
*768 Defendants, adopting a version of the Court of Appeal's interpretation, contend CSU has failed to satisfactorily address a whistleblower's complaint only if "CSU's investigatory process was so slipshod that it failed to be conducted in good faith and respect due process, or that if a violation was found in the internal process, the CSU failed to properly rectify the matter." Defendants also contend such procedural deficiencies must be shown in a mandate proceeding, not in the damages action itself.
(2) We agree with plaintiff. We rely first on the language of the statute itself. While standing alone the word "satisfactorily" does not indicate the person, organization, or entity that is to be satisfied, in the statute the word does not stand alone. Again, the sentence of section 8547.12, subdivision (c) at issue provides: "Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months." The only person referred to in the sentence is the injured party, or complainant, and the only organization or other entity is CSU. No one contends it is CSU that must be satisfied by its own investigation. Moreover, the thing to be addressed is the complaint, and the person who will most obviously be either satisfied or dissatisfied by the way a complaint is addressed is the complainant. Thus the most natural reading of the sentence is that the complainant may bring an action for damages if CSU does not, within 18 months, address the complaint to his or her satisfaction.
In defendants' reading, the entity to be satisfied is a court presented with a mandate petition. The plaintiff must, in a writ proceeding, convince the court CSU acted in bad faith or in a "slipshod" manner. The court is to deny the petition, precluding further remedy for the plaintiff, if using this standard it is "satisf[ied]" by the way CSU investigated the plaintiff's complaint. This reading, however, lacks support in the statutory text. Neither the entity purportedly to be satisfied, a court reviewing the matter on petition for writ of mandate, nor the standard under which it must be satisfied, a good faith and a minimally careful (not "slipshod") investigation, is mentioned or alluded to in the text of section 8547.12, subdivision (c). While not absolutely precluded by the text, therefore, defendants' interpretation is not one that can be naturally drawn from the statute itself.
Defendants rely on a passage in Ohton, supra, 148 Cal.App.4th at page 765, in which the appellate court rejected the plaintiff's proposed interpretation of "satisfactorily addressed" as referring to "`the subjective satisfaction of the whistleblower.'" The Ohton court reasoned: "Ohton's subjective interpretation of `satisfactorily addressed' can be rejected out of hand. Such an approach would render the statutory and administrative proceedings mandated by section 8547.12 and EO 822 nugatory; a complainant need only assert that he is unhappy with the decision in order to overturn it. We find no indication that the Legislature intended such a farfetched standard." (Ibid.)
*769 The premises of this argument fail to withstand analysis. First, availability of a civil action for damages once administrative remedies have been exhausted does not render the administrative process nugatory. We addressed this point in Arbuckle, supra, 45 Cal.4th at pages 976-977, explaining that an administrative process may serve important functions, such as promoting prompt and inexpensive resolution of disputes, even if its result is not binding in a later civil action: "Our conclusion does not make the proceeding before the State Personnel Board a `waste of time' and `meaningless.' We can think of several instances in which the Legislature has required or permitted disputing parties to complete a nonbinding adjudicative procedure before proceeding with a damages action in superior court. For example, an employee who does not receive wages has the option of filing a wage claim with the Labor Commissioner, who holds an informal hearing and issues a decision. (Lab. Code, §§ 98, 98.1.) Labor Code section 98.2 then permits either party to `appeal' the Labor Commissioner's decision `to the superior court, where the appeal [is] heard de novo.' Additional analogies can be made to nonbinding arbitration under the mandatory fee arbitration act (see Bus. & Prof. Code, § 6204, subd. (a)) and judicial arbitration, which is also nonbinding (see Code Civ. Proc., § 1141.20). The Legislature may consider such nonbinding proceedings to be useful as a means of promoting settlement, and in many cases nonbinding proceedings may be an effective way of resolving minor disputes with minimal expense to the parties." (Ibid.)
Nor does the availability of a civil action allow the complainant to overturn the administrative decision at will. A CSU employee cannot obtain relief in a civil action merely by "assert[ing] that he is unhappy with the decision" of CSU on the administrative complaint, as Ohton, supra, 148 Cal.App.4th at page 765, maintains. Rather, the dissatisfied employee simply has the opportunity of proving, in court, all the elements of a cause of action under section 8547.12, subdivision (c). Moreover, like section 8547.8, subdivision (c), which we addressed in Arbuckle, supra, 45 Cal.4th 963, section 8547.12 "authorizes, not an action to review the decision of the [administrative decision maker], but a completely separate damages action in the superior court in which the employee will enjoy all the procedural guarantees and independent factfinding that generally accompany such actions." (Arbuckle, at p. 973.) Thus, even if the employee proves a case of retaliation for whistleblowing and obtains damages in the civil action, that result does not "overturn" CSU's administrative decision (as stated in Ohton, at p. 765); it is a completely separate remedy authorized by statute.
There is, then, nothing "farfetched" (Ohton, supra, 148 Cal.App.4th at p. 765) in an interpretation of section 8547.12, subdivision (c) under which a CSU employee who has submitted an internal complaint but received an adverse decision may sue civilly. Such an interpretation puts CSU employees on precisely the same footing as state agency employees under section 8547.8, *770 subdivision (c), who may bring a civil action if they have submitted a complaint to the State Personnel Board and the board has "issued findings," including adverse findings, on the complaint. (See Arbuckle, supra, 45 Cal.4th at p. 978.)
To the extent any ambiguity remains after reading the language in its statutory context, the legislative history resolves it in favor of plaintiff's interpretation.
Section 8547.12 was added in 1994, remedying the Act's previous failure to explicitly cover CSU employees. (Stats. 1994, ch. 834, § 1, pp. 4117-4118.) As initially amended in the Senate, subdivision (c) of the proposed new statute contained language identical to that in the existing University of California statute, section 8547.10, authorizing a damages action only if the university "has failed to reach a decision" within its own established time limits. (Sen. Amend. to Sen. Bill No. 2097 (1993-1994 Reg. Sess.) Apr. 20, 1994.) The last sentence of subdivision (c) of the proposed new statute ("Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months.") was added to the bill by an Assembly amendment a few months later. (Assem. Amend. to Sen. Bill No. 2097 (1993-1994 Reg. Sess.) Aug. 8, 1994.) Legislative reports written in the interim help us understand why the change was made and what it was intended to do.
Staff of the Assembly Committee on Consumer Protection, Government Efficiency, and Economic Development analyzed the bill for a hearing to be held June 22, 1994. The analysis noted that the bill as amended on April 20 would allow CSU to set its own time limit for acting on whistleblower complaints, "greatly restrict[ing] the injured party's ability to seek damages in court." (Assem. Com. on Consumer Protection, Government Efficiency, and Economic Development, Analysis of Sen. Bill No. 2097 (1993-1994 Reg. Sess.) as amended Apr. 20, 1994, p. 2.) The report posed the question: "Should this provision be stricken, or recast so that the actions of the university do not impede the right of an injured party to seek damages in court?" (Ibid., underscoring omitted.) Because the April 20 language was identical to that in section 8547.10 (governing University of California employees), the report also asked whether that statute should be similarly amended.
On July 5, 1994, an analysis for the Republican members of the Assembly Committee on Public Employees, Retirement, and Social Security discussed *771 problems with the current version of Senate Bill No. 2097 at greater length.[6] The report cited a letter in opposition to the bill from the University Plaintiffs' Co-op, which argued (as summarized in the report) the bill, "in its present form, is inadequate to carry out its own objectives" and would "a) waste millions of taxpayer dollars to defend illegal practices by UC and CSU, and b) encourage UC and CSU to retaliate against whistle blowers." (Assem. Republican Caucus, analysis of Sen. Bill No. 2097 (1993-1994 Reg. Sess.) July 5, 1994, pp. 2-3.) To address these concerns, the Republican analysis suggested amendments to, among other things, "remove loopholes that presently free UC and CSU from any liability by tracking the language and standards of the federal Whistle Blower Protection Act of 1989." (Id. at p. 1.) A June 15, 1994, analysis for Republican members of the Assembly Committee on Consumer Protection, Government Efficiency, and Economic Development similarly noted that the University Plaintiffs' Co-op argued the bill was inadequate in its present form and suggested amendments to remove loopholes for both CSU and UC. (Assem. Republican Caucus, analysis of Sen. Bill No. 2097 (1993-1994 Reg. Sess.) June 15, 1994, p. 2.) Both Republican analyses recommended members oppose the bill unless the suggested amendments were adopted. (Id. at p. 1; Assem. Republican Caucus, analysis of Sen. Bill No. 2097 (1993-1994 Reg. Sess.) July 5, 1994, p. 1.)
The amendments urged by the University Plaintiffs' Co-op and favorably referenced by the two Republican committee analyses are found in the file of the Assembly Committee on Public Employees, Retirement, and Social Security. In a proposal dated July 1, 1994, the organization argued that both the existing law relating to the University of California (§ 8547.10) and Senate Bill No. 2097 were "riddled with loopholes that undercut legal protections for whistleblowers." (University Plaintiffs' Co-op, "Proposed Amendments to SB 2097," July 1, 1994, p. 1.) The proposal, among many other changes, suggested that the measure's subdivision (c) be amended to provide, in part: "[A]ny action for damages shall be available to the injured party after the injured party has first filed a complaint of retaliation with the university officer identified pursuant to subdivision (a) and the university has failed to provide a remedy satisfactory to the injured party regarding that complaint within ___ months." (Id. at pp. 1-2, italics added; see id. at p. 4.) Without this amendment, the proposal argued, "protections against retaliation for whistle blowers at Cal State will be as phoney as it is for those at UC now." (Id. at p. 1.)
*772 On August 8, 1994, as previously noted, the Assembly amended Senate Bill No. 2097 to add the last sentence of subdivision (c) to the proposed new statute, section 8547.12. The Assembly did not fully adopt the University Plaintiffs' Co-op's phrasing, "the university has failed to provide a remedy satisfactory to the injured party regarding that complaint within ___ months," but did use similar language, "the university has not satisfactorily addressed the complaint within 18 months." (Assem. Amend. to Sen. Bill No. 2097 (1993-1994 Reg. Sess.) Aug. 8, 1994.)[7] The bill passed both houses with that language included; the bill's author, in a letter to the Governor requesting his signature, explained that the provision had been added to the bill "[b]ecause of concerns raised by Republican members." (Sen. Tom Hayden, letter to Governor Wilson, Sept. 1, 1994.)
To summarize, the legislative history shows the requirement that CSU act "satisfactor[ily]" in addressing a whistleblower complaint or face the possibility of an action for damages originated in a proposal for amendments to Senate Bill No. 2097 (1993-1994 Reg. Sess.) that the University Plaintiffs' Co-op submitted to legislators to close "loopholes" undercutting whistleblower protection. In this proposal, the person to be satisfied by CSU's resolution of the complaint was "the injured party." The loophole objection and proposed remedy were noted in several legislative reports and adopted in particular by Republican staff for two Assembly committees, who recommended that Republican members vote against the bill unless it was amended as suggested in the reports. In response to the concerns of Republican members, the bill was then amended to provide for a civil remedy if CSU has not "satisfactorily addressed" the complaint within 18 months. While the phrasing ultimately adopted by the Legislature was not identical to that initially proposed by the University Plaintiffs' Co-op, the similarity suggests a legislative intent merely to shorten and paraphrasei.e., to make a stylistic changerather than to substantially alter the proposed language's meaning or effect, a conclusion supported by the absence of further recorded objection by *773 the University Plaintiffs' Co-op. The history thus tends to confirm our reading of "satisfactorily addressed" as referring to the satisfaction of the complainant.[8]
We conclude that, under the terms of section 8547.12, subdivision (c), plaintiff was entitled to seek a damages remedy for retaliation against him as a whistleblower once he had filed his retaliation complaint with CSU and CSU had rejected it. We next consider whether the doctrine of exhaustion of judicial remedies for an adverse administrative decision required him to overturn CSU's decision through a petition for writ of mandate before filing his civil action.

II. Exhaustion of judicial remedies

(3) Under the doctrine of exhaustion of judicial remedies, "[o]nce a[n administrative] decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. (Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 69-72 [99 Cal.Rptr.2d 316, 5 P.3d 874].) Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims. (Id. at p. 76.)" (McDonald v. Antelope Valley Community College Dist. (2008) 45 Cal.4th 88, 113 [84 Cal.Rptr.3d 734, 194 P.3d 1026].) Generally speaking, if a complainant fails to overturn an adverse administrative decision by writ of mandate, "and if the administrative proceeding possessed the requisite judicial character (see Pacific Lumber Co. v. State Water Resources Control Bd. [(2006)] 37 Cal.4th [921,] 944 [38 Cal.Rptr.3d 220, 126 P.3d 1040]), the administrative decision is binding in a later civil action brought in superior court." (Arbuckle, supra, 45 Cal.4th at p. 976.)
*774 An administrative finding will not be given preclusive effect in a later judicial proceeding, however, "`"if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged."'" (Arbuckle, supra, 45 Cal.4th at p. 976, quoting Pacific Lumber Co. v. State Water Resources Control Bd., supra, 37 Cal.4th at p. 945, quoting Brosterhous v. State Bar (1995) 12 Cal.4th 315, 326 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) In Arbuckle, we held the language of section 8547.8, subdivision (c), authorizing a damages action by a state agency employee once the State Personnel Board had reached a decision on the employee's whistleblower claim, left no room for a requirement of judicial exhaustion. "The bareness of this statutory language suggests that the Legislature did not intend the State Personnel Board's findings to have a preclusive effect against the complaining employee." (Arbuckle, at p. 976.)
(4) Like the parallel provision addressed in Arbuckle, section 8547.12, subdivision (c) authorizes a damages action by an alleged whistleblower whenever the employee has exhausted his or her internal remedies by filing an internal complaint with CSU and CSU has reached an adverse decision, i.e., has failed to "satisfactorily address" the employee's complaint. As in section 8547.8, the Legislature "expressly acknowledged the existence of the parallel administrative remedy" yet "did not require that the [administrative] findings be set aside by way of a mandate action ...." (Arbuckle, supra, 45 Cal.4th at p. 976.) As in Arbuckle, then, to hold an adverse administrative finding preclusive in the expressly authorized damages action would be contrary to the evident legislative intent.
Also as in Arbuckle, giving CSU's adverse decision preclusive effect would unduly restrict the civil remedy expressly provided for in section 8547.12. Writ review, whether through administrative mandate (Code Civ. Proc., § 1094.5) or ordinary mandate (id., § 1085), gives substantial deference to the agency's findings. Requiring the employee to overturn CSU's adverse decision by writ before bringing a civil action would mean that "in nearly every case, an adverse decision from [CSU] would leave the employee without the benefit of the damages remedy set forth in [section 8547.12, subdivision (c)]." (Arbuckle, supra, 45 Cal.4th at p. 977.) As we explained: "Nothing in [the Act] suggests that the Legislature intended the damages remedy created in that provision to be so narrowly circumscribed, and such a narrow interpretation of the damages remedy would hardly serve the Legislature's purpose of protecting the right of state employees `to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution.'" (Id. at pp. 977-978, quoting § 8547.1.)
Finally, as discussed earlier in this opinion, the Legislature's requirement, in both sections 8547.8 and 8547.12, that the employee submit his or her *775 complaint to a nonbinding administrative investigative procedure is neither irrational nor particularly unusual. (See Arbuckle, supra, 45 Cal.4th at pp. 976-977.) Even if it does not produce a judicially binding determination, CSU's internal investigation of a whistleblower complaint, like that of the State Personnel Board under section 8547.8, is more likely to promote early and less costly resolution of complaints than permitting an alleged whistleblower to bring a damages action without exhausting administrative remedies.
(5) We conclude that under section 8547.12, subdivision (c), a CSU employee who has complied with CSU's internal complaint and investigation requirements and received an adverse decision from CSU may bring a civil action for damages against those allegedly responsible for unlawful retaliation. Ohton v. Board of Trustees of California State University, supra, 148 Cal.App.4th 749, is disapproved to the extent it holds otherwise.

DISPOSITION
The judgment of the Court of Appeal is reversed.
George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.
NOTES
[1] All unspecified statutory references are to the Government Code.
[2] Section 8547.12 requires CSU to create a procedure for receiving and resolving complaints by employees or applicants for employment alleging retaliation for making protected disclosures. (Id., subds. (a), (c).) In 2002, by Executive Order No. 822 (EO 822), the chancellor of CSU adopted a set of procedures for responding to whistleblower complaints.

EO 822 provides for the alleged whistleblower to make a detailed written complaint to the vice-chancellor of human resources within 12 months of the alleged act of retaliation. The vice-chancellor is to commission an investigation, by a designee from within CSU or by an outside investigator at the vice-chancellor's discretion. The investigator must interview the complainant, who may at the initial interview "present a list of witnesses and documentary evidence in support of the complaint." The investigator is to review the supporting documentation so supplied and any responsive materials from employees allegedly responsible for the retaliatory action, interview witnesses, and take any other actions deemed appropriate to complete the investigation. The investigator then gives the vice-chancellor a written report, which includes a summary of the investigation and a conclusion regarding the alleged retaliation for whistleblowing. The vice-chancellor is to provide the complainant with "the summary and conclusion," to which the complainant may file a written response. Finally, the vice-chancellor must respond to the complainant with a letter of determination, which constitutes the final CSU decision regarding the complaint. Time limits are set for each of these steps, and the entire process is to be completed within 18 months of the complaint's filing.
[3] Section 8547.12, subdivision (c) provides: "In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a university employee, including an officer or faculty member, or applicant for employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party. Punitive damages may be awarded by the court where the acts of the offending party are proven to be malicious. Where liability has been established, the injured party shall also be entitled to reasonable attorney's fees as provided by law. However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the university officer identified pursuant to subdivision (a), and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the trustees. Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months." (Italics added.)
[4] A concurring opinion expressed the view that this literal reading of section 8547.10, subdivision (c) would "strongly undermine the purposes of the Act ...." (Miklosy, supra, 44 Cal.4th at p. 904 (conc. opn. of Werdegar, J., joined by George, C. J., and Moreno, J.).) The Legislature subsequently passed a bill amending the statute so as to make an action for damages available when the University of California has reached a timely but adverse decision, as well as when it has failed to reach a timely decision, but the Governor vetoed it. (Sen. Bill No. 219, vetoed by Governor, Oct. 11, 2009, Sen. Final Hist. (2009-2010 Reg. Sess.) [as of May 3, 2010].)
[5] The long and tangled legislative history that produced this threefold variation in what are largely parallel statutes is summarized in Miklosy, supra, 44 Cal.4th at pages 891-897.
[6] Analyses prepared for members of partisan caucuses are not necessarily reliable indicators of legislative intent, as they may not be shared on an official basis with the whole of the legislative body. As will become clear below, we refer to the Republican analyses here only for the limited purpose of illuminating the substance of Republican objections to the bill, objections the Democratic author later accommodated through the amendment at issue.
[7] Although the Legislature also did not adopt the suggestion to use language from the federal Whistleblower Protection Act of 1989 (Pub.L. No. 101-12 (Apr. 10, 1989) 103 Stat. 16), it did create a somewhat similar structure. Under the federal law, alleged whistleblowers must exhaust their remedies with the Office of Special Counsel, which investigates whistleblower claims, but may proceed to seek a remedy from the Merit Systems Protection Board if the Office of Special Counsel either terminates the investigation without finding a prohibited personnel practice or fails to act within 120 days, or if the Office of Special Counsel finds a prohibited personnel practice and the employing agency fails to correct it in a reasonable period of time; the Merit Systems Protection Board's decision may then be reviewed judicially. (5 U.S.C. §§ 1214(a)(3), (b)(2)(C), 7703.)
[8] Defendants rely on the Ohton court's observation that the legislative history of Senate Bill No. 2097 (1993-1994 Reg. Sess.) indicates the procedure established by the measure would be" `similar to that provided to University of California employees.'" (Ohton, supra, 148 Cal.App.4th at p. 764, italics omitted.) The quote in Ohton, however, is from a report analyzing the bill as amended on April 20, 1994. (Assem. Com. on Consumer Protection, Government Efficiency, and Economic Development, Analysis of Sen. Bill No. 2097 (1993-1994 Reg. Sess.) as amended Apr. 20, 1994, p. 2.) At that time, the language proposed for subdivision (c) of section 8547.12 was, indeed, the same as that in subdivision (c) of section 8547.10. The August 8 amendment added the language we are concerned with here, which is not included in the University of California statute. (As we observed in Miklosy, supra, 44 Cal.4th at pp. 896-897, the Legislature did not accept the University Plaintiffs' Co-op's invitation to close the "loophole" for University of California employees when it did so for CSU employees.)