Filed 3/30/23  Sianez v. Employment Development Dept. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| LARISSA SIANEZ, | B322701 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. CV19004066) |
| v. | |
| EMPLOYMENT DEVELOPMENT DEPARTMENT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sonny S. Sandhu, Judge.  Affirmed in part and reversed in part.

Bohm Law Group, Lawrance A. Bohm, and Zane E. Hilton for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, William T. Darden, Supervising Deputy Attorney General, and Kelsey E. Papst, Deputy Attorney General, for Defendant and Respondent.

Defendant and respondent Employment Development Department (EDD) fired plaintiff and appellant Larissa Sianez (Sianez). She appealed her termination to the State Personnel Board (the Board). The Board affirmed the termination after a multi-day evidentiary hearing in front of an Administrative Law Judge (ALJ). Sianez did not seek a writ of mandamus to overturn the Board's decision and instead filed a civil action in superior court asserting claims against EDD for discrimination, various forms of retaliation, and failure to accommodate. EDD demurred to the operative complaint, primarily arguing that Sianez's failure to exhaust her judicial remedies (the failure to pursue mandamus relief) precluded her causes of action. The trial court sustained the demurrer in its entirety, and we consider whether Sianez's claims are indeed precluded by the related doctrines of judicial exhaustion and issue preclusion.

## I. BACKGROUND

### A. *Sianez's Employment with EDD*

Sianez began working at EDD as an employment program representative in July 2009. In March 2013, she was promoted to full-time employee. Shortly after Sianez became a full-time employee, she began to have difficulties with her employer, some of which we catalog in the discussion that follows.[1]

---

[1] Sianez's civil complaint alleges facts regarding disputes between Sianez and EDD from 2013 to the date of her termination. The parties appear to agree the events that occurred prior to November 2016 cannot or do not serve as bases for Sianez's claims. We accordingly do not discuss them.

### 1. *Prior settlements with EDD*

A dispute arose between Sianez and EDD over whether EDD violated a memorandum of understanding when it denied Sianez's request for a flexible work schedule. In October 2015, Sianez and EDD entered into a settlement agreement to resolve the dispute. Pursuant to the agreement, Sianez released EDD from any claims existing as of the date of the settlement, "in connection with or arising out of the actions taken by [EDD] regarding" the dispute.

Later, in May 2016, EDD issued Sianez a Notice of Adverse Action suspending her for 20 working days. The grounds for the suspension were inefficiency, inexcusable neglect, and misconduct from July 2013 through June 2015. In November 2016, however, the Board approved a settlement agreement between Sianez and EDD. Pursuant to the agreement, Sianez released all claims existing as of the date of the settlement in connection with the Notice of Adverse Action and agreed to withdraw any grievances or complaints "which arise out of the actions taken by [EDD] in connection with" that notice.

### 2. *Subsequent events*

These two settlement agreements did not mark the end of the conflict between the parties. Sianez was issued corrective action memoranda alleging various instances of misconduct (e.g., failure to follow instructions, absenteeism, and disruptive behavior) in July, August, and September 2017.

Sianez then took protected leave for a claimed serious health condition approximately eight to ten times each month from October 2017 through January 2018. Sianez's manager issued her a corrective action memorandum based on her decision

3

to take leave.  Sianez protested that EDD retaliated against her for taking protected leave and for joining in complaints made by a co-worker.

In November 2017, Sianez was denied a merit salary adjustment because she "failed to follow instructions, failed in performing her duties, and was insubordinate" for the period from July 13, 2017, through November 6, 2017.[2]  Sianez responded by filing a whistleblower retaliation complaint with the Department of Industrial Relations.

Early in 2018, Sianez's manager MeShan Record (Record) confirmed Sianez was eligible for leave under the Family and Medical Leave Act (FMLA).  Record asked Sianez to clarify the duration of her FMLA leave.  Sianez provided a doctor's note that stated the leave was to be "as needed" and later filed a discrimination complaint alleging Record discriminated against Sianez because of her disability and retaliated against her for taking protective leave.  Record subsequently issued Sianez a corrective action memorandum alleging unacceptable conduct and attendance.

On March 21, 2018, EDD terminated Sianez's employment, effective March 30, 2018.  Following her termination, Sianez filed complaints with the State Personnel Board, the Department of Fair Housing and Employment (DFEH), and the Equal Employment Opportunity Commission.  Sianez subsequently received right to sue notices from the DFEH.

---

[2]  Around this time, Sianez received a performance evaluation stating she met standards in four categories but did not, overall, meet EDD's employment expectations.

4

*B. The Administrative Proceedings*[3]

*1. The prehearing statement*

The record does not contain a copy of Sianez's administrative complaint regarding her termination. It does, however, contain a copy of her first amended prehearing settlement conference statement, which indicates Sianez asserted affirmative defenses of retaliation, namely, whistleblower retaliation; retaliation for filing complaints with the DFEH; retaliation for filing discrimination complaints with EDD's Equal Employment Opportunity office; and retaliation for filing a workers' compensation claim, requesting reasonable accommodation, exercising her rights under the FMLA and California Family Rights Act (CFRA), and participating in an investigation of a Department of Industrial Relations complaint.

The prehearing statement also summarized Sianez's anticipated testimony, which indicated she intended to testify (among other things) about her asserted disability, the disability discrimination complaints she submitted to EDD's equal employment opportunity office, her requests for reasonable

---

[3] In the trial court, EDD submitted a request for judicial notice of various documents: Sianez's two settlement agreements with EDD, the prehearing statement from the administrative proceeding, the decision from the administrative proceeding, and correspondence including a letter between Sianez and the Government Claims program. The appellate record does not reveal whether the trial court expressly ruled on the request for judicial notice, but its disposition of the issues indicates it did so impliedly. EDD has asked us to take judicial notice of the same documents it submitted to the trial court and we grant the request. (Evid. Code, § 459, subd. (a).)

5

accommodation and leave under the FMLA and CFRA, her request for a shorter lunch period, and her continued need to park in front of the EDD building where she worked.

### 2.    *The administrative decision*

In August 2018, a Board ALJ held an evidentiary hearing and rendered a proposed decision. The ALJ sustained charges of inexcusable neglect of duty, insubordination, dishonesty, discourteous treatment, willful disobedience, misuse of state property, and other failure of good behavior.

The ALJ found: "A preponderance of the evidence established [Sianez] was an unreliable employee who did not report to work on a regular basis, and was consistently late when she did report to work. [Sianez] also refused to comply with departmental policies and supervisor directives, and was rude to staff despite repeated counseling, instruction, and prior discipline." The ALJ further found that "the likelihood [Sianez] will engage in the same behavior is high since she denies wrongdoing and does not appear to understand or appreciate the significance of her actions. For instance, at the hearing, [Sianez] argued more than once that most of her absences were excused. Nevertheless, the evidence established [Sianez] routinely and defiantly failed to follow the Attendance and Break Policy and the call-in procedures when she was absent or tardy. A failure to accept and admit responsibility for acts of misconduct makes it more likely that such misconduct will recur. [Citation.] [¶] [Sianez] has also proven herself to be untrustworthy, and it is well-established that dishonesty is not an isolated act; it is more a continuing trait of character. [Citations.] [¶] Also relevant is [Sianez's] prior discipline. . . . It is not in the Department's best

6

interest to retain an employee who engages in misconduct, is repeatedly subject to discipline, and repeatedly fails to follow a supervisor's directives. For all these reasons, dismissal is an appropriate penalty . . . ."

The Board adopted the ALJ's proposed decision.

### C. Sianez's Civil Suit Against EDD

Sianez filed the operative first amended civil complaint in April 2021. It alleges causes of action for violation of the CFRA (first cause of action), Labor Code sections 98.6 and 1102.5 (seventh cause of action), and the California Whistleblower Retaliation Act (eighth cause of action). The operative complaint also alleges various Fair Employment and Housing Act (FEHA) violations: disability discrimination (second cause of action), failure to accommodate (third cause of action), failure to engage in the interactive process (fourth cause of action), retaliation (fifth cause of action), and failure to prevent harassment, discrimination, and/or retaliation (sixth cause of action).

The causes of action for violation of the CFRA; disability discrimination; retaliation; and failure to prevent harassment, discrimination, and/or retaliation allege Sianez was harassed, discriminated and retaliated against for taking CFRA-protected leaves of absence, because of her physical or mental disabilities, and in response to her complaints of disability and gender related harassment and discrimination. The failure to accommodate and failure to engage in the interactive process causes of action allege Sianez was able to perform the essential duties of her position with reasonable accommodation but EDD denied her accommodation requests and refused to participate in a timely and good faith interactive process. The statutory claim for

7

violation of Labor Code sections 98.6 and 1102.5 alleged Sianez made protected complaints about topics like assault and an unsafe working environment and EDD unlawfully retaliated against her. The cause of action for violation of the California Whistleblower Protection Act (Government Code section 8547.8[4]) alleged Sianez complained to supervisors and management about improper government activities and concerns about the health and safety of employees in the workplace and EDD retaliated against her in response.

### D. EDD's Demurrer and the Trial Court's Ruling

EDD demurred to the operative complaint. It argued Sianez's causes of action were barred or otherwise precluded because Sianez is bound by the Board's determination that her termination was proper. EDD additionally argued Sianez was required to exhaust judicial remedies in order to assert her termination was unlawful and her claims were precluded insofar as they relied on conduct subject to the releases in the October 2015 and November 2016 settlement agreements.

The trial court sustained the demurrer with leave to amend. The court found Sianez failed to exhaust her judicial remedies with regard to the Board's decision, the administrative decision was accordingly binding, and Sianez was precluded from relitigating her claims.

Sianez did not file an amended complaint in the allotted time. EDD accordingly filed an ex parte application to dismiss

---

[4] Undesignated statutory references that follow are to the Government Code.

8

the action, which the court granted.  The trial court then entered judgment for EDD.

## II.  DISCUSSION

The bulk of the trial court's ruling is correct.  Issue preclusion and judicial exhaustion principles stand as a bar to most of the claims asserted in the operative complaint.  A remand is required, however, to permit appropriate disposition of Sianez's Whistleblower Protection Act claim and her FEHA claims alleging a failure to accommodate and failure to engage in the interactive process.  Judicial exhaustion of a Whistleblower Protection Act claim brought pursuant to section 8547.8 is not required under *State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963 (*Arbuckle*).  In addition, the finding that Sianez was terminated for proper reasons does not necessarily doom her claims for failure to accommodate and failure to engage in the interactive process.

### A.    Standard of Review

We review an order sustaining a demurrer without leave to amend de novo.  (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.)  "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.  We may also consider matters subject to judicial notice.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6[ (*Evans*)].)"  (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. omitted.)

9

B.     *Sianez Was Not Required to Judicially Exhaust Her Government Code Section 8547.8 Claim*

Judicial exhaustion, which our Supreme Court has described as a "corollary" to issue preclusion doctrine, "'may arise when a party initiates and takes to decision an administrative process—whether or not the party was required, as a matter of *administrative* exhaustion, to even begin the administrative process in the first place. Once a decision has been issued, provided that decision is of a sufficiently judicial character to support [issue preclusion], respect for the administrative decision[-]making process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. [Citation.] Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims.' [Citation.]" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 867 (*Murray*); see also *Runyon v. Board of Trustees of California State University* (2010) 48 Cal.4th 760, 773 (*Runyon*).) "An administrative finding will not be given preclusive effect in a later judicial proceeding, however, ""if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged."" [Citation.]" (*Id.* at 774.)

Section 8547.8, subdivision (c), enacted as part of the California Whistleblower Protection Act, provides in relevant part: "In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee or applicant for state employment for having made a protected

10

disclosure shall be liable in an action for damages brought against him or her by the injured party." Subdivision (c) further specifies that "any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a), and the board has issued, or failed to issue, findings pursuant to Section 19683." (§ 8547.8, subd. (c).)

Our Supreme Court interpreted this statutory language in *Arbuckle, supra,* 45 Cal.4th 963. The court observed the statute "expressly acknowledged the existence of the parallel administrative remedy" but "did not require that the board's findings be set aside by way of a mandate action; rather, it gave as the only precondition to the damages action authorized in section 8547.8(c), that a complaint be filed with the board and that the board 'issue[], or fail[] to issue, findings.' [Citation.]" (*Id.* at 976.) The Supreme Court held "[t]he bareness of this statutory language suggests that the Legislature did not intend the State Personnel Board's findings to have a preclusive effect against the complaining employee." (*Ibid;* see also *Runyon, supra,* 48 Cal.4th at 774 [*Arbuckle* concluded the language of section 8547.8, subdivision (c) "left no room for a requirement of judicial exhaustion"].)

The holding in *Arbuckle* is dispositive of Sianez's eighth cause of action: the Board's decision regarding Sianez's termination does not foreclose her ability to bring a civil claim under Government Code section 8547.8, subdivision (c). That claim was therefore incorrectly resolved in EDD's favor on demurrer.

All of the arguments EDD makes in urging the contrary are unpersuasive. EDD contends this case is distinct from *Arbuckle*

11

because *Arbuckle* involved informal proceedings without an evidentiary hearing. Taking great pains to avoid calling the contents of the administrative decision "findings," EDD contends the language in section 8547.8, subdivision (c) does not apply to the Board's "issue determinations in a disciplinary proceeding." The text of section 8547.8, subdivision (c), however, makes no distinction between so-called "informal" findings and the findings made in the Board's decision, and we believe the reasoning in *Arbuckle* fully applies here.

EDD's reliance on *Murray* for the proposition that subdivision (c) was never intended to apply outside the context of informal Whistleblower Retaliation Act processes is also unavailing. *Murray* distinguished *Arbuckle* on the ground that the statute at issue in *Murray* contained "no language . . . suggesting Congress intended that conclusive findings made by the Secretary in a final nonappealable order should not have preclusive effect in a subsequent state court action." (*Murray, supra,* 50 Cal.4th at 877, fn. 8.) It did not make any distinction regarding the point in the administrative process at which the findings were made.

Finally, EDD's argument that the Whistleblower Protection Act cannot divest the Board of its constitutional authority to decide disciplinary actions also fails. Application of *Arbuckle* to the facts at hand does not divest the Board of any authority. The Board reviewed Sianez's complaint and adopted a decision that affirmed the termination of her employment. Sianez does not seek to overturn the termination decision. And as discussed *post,* some of the Board's findings have preclusive effect against Sianez's current claims. Only Sianez's eighth cause of action is affected, and we see no constitutional reason why the Legislature

cannot permit a subsequent civil action for a Whistleblower Protection Act claim when it is undisputed the Board's ruling on such a claim can be reviewed in the courts via a mandamus petition.

### C. Most of Sianez's Remaining Causes of Action Are Precluded

Sianez presents no reasoned argument urging a similar legislative purpose prevents the application of ordinary issue preclusion and judicial exhaustion principles to her remaining claims.[5] Accordingly, the normal rules apply. It is uncontested both that the administrative proceeding was of a sufficiently judicial character to trigger the judicial exhaustion requirement and that Sianez did not exhaust her judicial remedies by filing a petition for writ of mandate to overturn the Board's decision. Accordingly, the Board's decision is binding on the issues therein litigated. We accordingly consider whether, and to what extent, Sianez's causes of action (other than the already-discussed

---

[5] Sianez makes brief reference to a portion of *Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343 (*Taswell*) that concludes claims under Labor Code section 1102.5 do not require judicial exhaustion. Sianez does not, however, address why or how our Supreme Court's holdings in *Arbuckle* and *Runyon* might apply to claims under Labor Code section 1102.5 or 98.6, the latter of which *Taswell* does not address at all. The point (insofar as there is a point at all) is therefore waived. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)

Whistleblower Protection Act claim) are impacted by the Board's ruling.

### 1. Issue preclusion principles

"The threshold requirements for issue preclusion are: (1) the issue is identical to that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a person who was a party or in privity with a party to the former proceeding. [Citation.]" (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481 (*Castillo*).)

"The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings . . . ." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.) "An issue is actually litigated 'when [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined* . . . . A determination may be based on a *failure of . . . proof* . . . .' [Citation.]" (*People v. Sims* (1982) 32 Cal.3d 468, 484.) An issue is "'necessarily decided,'" if "the issue was not "'entirely unnecessary'" to the judgment in the prior proceeding." (*Castillo, supra*, 92 Cal.App.4th at 482.)

### 2. Sianez's failure to accommodate and failure to engage in interactive process causes of action are not precluded

"While a claim of failure to accommodate is independent of a cause of action for failure to engage in an interactive dialogue, each necessarily implicates the other." (*Moore v. Regents of*

*University of California* (2016) 248 Cal.App.4th 216, 242 (*Moore*).) "The elements of a failure to accommodate claim are "'(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position [held or desired], and (3) the employer failed to reasonably accommodate the plaintiff's disability.'"" (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 346.) The elements of a claim for failure to engage in the interactive process include: (1) plaintiff was an employee of defendant or applied for a job with defendant; (2) plaintiff had a disability that was known to defendant; (3) plaintiff requested that defendant make a reasonable accommodation so that he would be able to perform the essential job requirements; (4) plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made; (5) defendant failed to participate in a timely good faith interactive process; and (6) defendant's failure to engage in a good-faith interactive process was a substantial factor in causing plaintiff harm. (§ 12940, subd. (n); CACI No. 2546.)

The binding nature of the Board's decision does not preclude—on demurrer—Sianez's causes of action for failure to accommodate and failure to engage in the interactive process. Neither claim necessarily relies upon the appropriateness, or lack thereof, of Sianez's termination for its viability.

EDD believes otherwise for three reasons, none of which is convincing. EDD argues Sianez's claim is barred because the operative complaint alleges that one of the ways EDD failed to accommodate Sianez's disability was by terminating her employment. This does not entirely bar her claim because Sianez alleges more than one way in which EDD failed to accommodate

15

her disability.  Second, EDD contends the administrative decision includes factual findings that establish facts detrimental to Sianez's claims.  While EDD identifies findings that would seem to chip away at Sianez's ability to prove a failure to accommodate or engage in the interactive process, it does not establish those findings necessarily demonstrate, at this stage of the litigation, that Sianez's claims cannot be proven.  Third, EDD argues the administrative decision precludes Sianez from establishing she is a qualified individual with a disability because the Board found Sianez was an unreliable employee who failed to follow office policies.  Again, while that finding may certainly bear upon and constrain Sianez's claims as this litigation progresses, it does not conclusively establish she cannot state a proper claim for failure to accommodate and failure to engage in the interactive process.

### 3. Sianez's remaining causes of action are precluded by the administrative decision

The binding Board's findings do, however, preclude Sianez's remaining causes of action.[6]  The issues presented in the

---

[6]    The Board's finding that Sianez's termination was proper is binding even if Sianez did not expressly address her discrimination or retaliation claims during the administrative hearing.  For purposes of preclusion analysis, what matters is "whether the party against whom issue preclusion is being sought had 'an adequate opportunity to litigate' the factual finding or issue in the prior administrative proceeding."  (*Murray*, *supra*, 50 Cal.4th at 869; see also *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 286 ["The doctrine of collateral estoppel applies on issues litigated even though some factual matters or legal arguments which could have been raised were not"].)  Sianez could have introduced additional facts relevant to

administrative action are identical to those presented in Sianez's claims that she was discriminated and retaliated against. All are founded on the same core facts regarding her performance at work, her interactions with her colleagues, and the reasons for her termination. The issue of the propriety of Sianez's termination was also actually litigated and necessarily decided in the administrative hearing. The Board (in adopting the ALJ's proposed decision) found Sianez's termination was appropriate and motivated by proper reasons, such as her lack of reliability as an employee and failure to follow various departmental policies. In other words, the Board could not have found Sianez's termination appropriate if the Board had also found the reasons for Sianez's discharge were merely a pretext for discrimination or retaliation. (E.g., *Castillo*, *supra*, 92 Cal.App.4th at 481-482.)

The same rationale defeats Sianez's remaining claims. An adverse employment action is an essential element of Sianez's claims for retaliation and discrimination under FEHA, violation of the CFRA,[7] and violation of the relevant Labor Code sections. (E.g., *Horsford v. Board of Trustees of California State University*

the remaining discrimination and retaliation claims and made these legal arguments before the Board. Her choice not to do so does not prevent the application of preclusion now.

[7] Sianez correctly notes that a plaintiff may state a claim for violation of the CFRA by way of interfering with an employee's CFRA rights, or by way of retaliation for use of CFRA rights. (E.g., *Moore*, *supra*, 248 Cal.App.4th at 233.) Contrary to Sianez's assertion, however, her cause of action for violation of the CFRA only alleges EDD retaliated against her for exercising those rights. It does not purport to allege an interference claim.

17

(2005) 132 Cal.App.4th 359, 373 [adverse action required for FEHA discrimination suit]; *Moore, supra,* 248 Cal.App.4th at 234, 248 [same for FEHA retaliation and CFRA retaliation claims]; *Hawkins v. City of Los Angeles* (2019) 40 Cal.App.5th 384, 392 [prima facie case for violation of Labor Code section 1102.5 requires plaintiff to show employer subjected them to adverse employment action]; *Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 977 [same for Labor Code section 98.6].) Sianez does not argue any adverse employment actions other than her termination could support the claims. As a result, the Board's decision precludes Sianez's first, second, fifth, and seventh causes of action. And because Sianez's discrimination and retaliation claims fail to state a claim, so too does her sixth cause of action for failure to prevent discrimination and retaliation. (E.g., *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021; *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314.)

Sianez's attempt to rely on the mixed-motive doctrine in *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 to save her claims is misplaced. The mixed-motive defense is just that, a defense to be raised by an employer, not a theory to save an employee's defective claim for discrimination. Further, the necessary predicate for the applicability of the mixed-motive doctrine is for the plaintiff to prove discrimination was a substantial motivating factor in an adverse employment decision. Sianez failed to so prove in the administrative proceeding, and that finding is binding here.

DISPOSITION

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.


19