Filed 6/12/18; Certified for Publication 6/21/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CAROL E. WASSMANN,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>SOUTH ORANGE COUNTY COMMUNITY COLLEGE DISTRICT et al.,<br><br>    Defendants and Respondents. | G053411<br><br>(Super. Ct. No. 30-2013-00692313)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Frederick P. Aguirre, Judge. Affirmed. Request for Judicial Notice. Granted in part and denied in part. Motion to strike Appellant's opening brief. Denied.

Carol E. Wassmann, in pro. per., for Plaintiff and Appellant.

Walsh & Associates, Dennis J. Walsh and Matthew C. Wallin for Defendants and Respondents South Orange County Community College District, Karima Feldhus, Robert Brumucci and Glenn Roquemore.

Schwartz, Steinsapir, Dohrmann & Sommers, Michael R. Feinberg and Amy Moolin Cu, for Defendants and Respondents Lewis Long and Katherine Schmeidler.

\* \* \*

## INTRODUCTION

The South Orange County Community College District (the District) dismissed Carol E. Wassmann from employment as a tenured librarian at Irvine Valley College (IVC) in April 2011. Several years later, Wassmann obtained a right to sue notice from the California Department of Fair Employment and Housing (DFEH) and brought this lawsuit against the District, Karima Feldhus, Robert Brumucci, Glenn Roquemore,[1] Lewis Long, and Katherine Schmeidler. Wassmann, who is African-American, alleged causes of action for racial discrimination, age discrimination, and harassment in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), intentional infliction of emotional distress, and two other causes of action not relevant here.

The trial court granted two motions for summary judgment, one brought by the District Defendants and the other brought by Long and Schmeidler, on the ground the FEHA claims were barred by res judicata, collateral estoppel, or failure to exhaust administrative remedies, and the intentional infliction of emotional distress cause of action was barred by res judicata, collateral estoppel, or the statute of limitations.

We affirm. After Wassmann was dismissed from employment and before she brought this lawsuit, a five-day-long administrative hearing was conducted in accordance with Education Code section 87660 et seq., which sets out a comprehensive scheme governing "the evaluation of, the dismissal of, and the imposition of penalties on, community college faculty." (Ed. Code, § 87660.) After hearing testimony, receiving

---

[1] We refer to the District, Feldhus, Brumucci, and Roquemore collectively as the District Defendants. All defendants when referred to collectively are called Defendants.

2

documentary evidence, and reviewing written arguments, the administrative law judge issued a 20-page decision upholding the District's decision and determining there was cause for dismissing Wassmann. The trial court upheld the administrative law judge's decision by denying Wassmann's petition for writ of mandate.

The administrative law judge's decision and the trial court judgment upholding it are significant because, under principles of res judicata and exhaustion of judicial remedies, they are binding on the issue of cause for dismissal and therefore dispositive of Wassmann's FEHA causes of action arising out of dismissal from employment. To the extent Wassmann's FEHA claims sought recovery for injuries other than loss of employment, those claims are barred for failure to exhaust administrative remedies; that is, Wassmann did not file a complaint with the DFEH within one year of the date on which the alleged unlawful acts were undertaken. Wassmann's cause of action for intentional infliction of emotional distress, a common law claim for which Wassmann was not required to obtain a right to sue notice from the DFEH, was barred by the two-year statute of limitations of Code of Civil Procedure section 335.1.

## FACTS

### I.

### Background

The District employed Wassmann as a public service librarian at IVC from August 2005 until April 28, 2011. Feldhus, the Dean of Liberal Arts, became Wassmann's supervisor in 2009. Jayne Sinegal, who is African-American and older than Wassmann, was the library department chair. Ettie Graham was the District's director of human resources.

While she was employed by the District, Wassmann was a member of the South Orange County Community College District Faculty Association (the Association), which is an affiliate of the Community College Association/California Teachers Association. Long and Schmeidler are District employees and were members and

3

officers of the Association.  As Association officers, Long and Schmeidler represented Wassmann in dealing with matters arising under the Association's master agreement with the District.

## II.

### July 20, 2009 Incident and July 30, 2009 Letter

In a letter to Wassmann dated July 30, 2009, Feldhus asserted that on July 20, Wassmann had gone to Feldhus's office "in an agitated state" and "loudly" had stated that Sinegal omitted Wassmann from an e-mail.  Feldhus asserted that Wassmann had written "What a bitch!!!" across the top of a print copy of the e-mail.  Wassmann testified she had written, "What a witch."  In the July 30 letter, Feldhus described Wassmann's conduct as "unprofessional, discourteous, and unacceptable" and stated, "Let this letter serve as notice to you that I absolutely will not condone your disrespectful treatment of your co-workers.  You must stop this unprofessional behavior immediately."

In August 2009, Schmeidler met with Wassmann to discuss the July 30 letter.  Wassmann asked Schmeidler to talk to Feldhus and get her to stop mistreating Wassmann.  Wassmann testified at her deposition that she knew Feldhus's treatment of her was based on race because Feldhus is from Algeria, Feldhus looks down upon people of darker skin color, and "[a] person of my shade from [Feldhus's] country is considered a slave."  Wassmann testified at her deposition that because Feldhus is Algerian and Caucasian, she treated African-Americans as either "field slaves" or "house slaves."  Schmeidler thereafter met with Feldhus to discuss the July 30 letter.

## III.

### Notice of Unsatisfactory Performance
### and Unprofessional Conduct

On September 11, 2009, Feldhus issued Wassmann a "Notice of Unsatisfactory Performance and Unprofessional Conduct" (the September 2009 Notice).  The September 2009 Notice identified areas of work deficiencies and unprofessional

4

conduct, including: (1) Wassmann was not in her assigned work areas according to her schedule; (2) at times when Feldhus tried to locate Wassmann, she failed to respond to knocks on her office door and walked past Feldhus without acknowledging her; (3) Wassmann e-mailed an overdue work schedule to Feldhus that contained errors; and (4) during department meetings, Wassmann sat with her head down, made no eye contact with other department members, and showed no interest in the meetings.

The September 2009 Notice directed Wassmann to report to her work locations as scheduled, keep her office door open during work hours, communicate with faculty, staff, administrators, and students in a professional manner, refrain from hostile behavior, participate in department meetings, and follow established library procedures.

On receiving the September 2009 Notice, Wassmann met with Schmeidler and asked to have it removed from her personnel file. Schmeidler explained to Wassmann that in order to accomplish that, Wassmann would have to file a grievance and identify precisely which allegations in the September 2009 Notice that she believed were inaccurate. Wassmann and Schmeidler met with Feldhus on September 18. After the meeting, Schmeidler worked with Wassmann to prepare a grievance. Ultimately, Wassmann submitted a "Rebuttal" to the September 2009 Notice.

**IV.**

**Incidents of Unprofessional Conduct and Unsatisfactory Performance, September 2009 through March 2010**

Wassmann failed to attend library staff meetings from September 16, 2009 to March 23, 2010 and, as a consequence, missed important updates about the department. In December 2009, Sinegal asked Wassmann to participate in interviews for a part-time librarian position. Wassmann refused, claiming she did not have the time. Wassmann sent e-mails to Sinegal that were rude and unprofessional. Wassmann failed to fulfill "flex" requirements (activities in addition to teaching, classroom preparation,

5

and office hours) by not attending a January 7, 2010 school meeting. Wassmann also submitted her spring schedule in an incorrect format.

On January 26, 2010, Sinegal assigned Wassmann the task of conducting a bibliographical instruction during a shift at the reference desk. Wassmann refused the task and asked a colleague to cover the instruction. At her deposition, Wassmann testified she believed she could turn down a request from the department chair to teach the class. Wassmann also testified one reason for turning down the request was that Sinegal's daughter was going to be a student in the class.

On February 8, 2010, Feldhus and Graham went to Wassmann's office to speak with her about a nondisciplinary matter. Feldhus and Graham knocked on Wassmann's locked office door. Feldhus advised Wassmann this was a nondisciplinary meeting. Wassmann opened the door, stated, "I'll be right there," closed the door, and did not come out. Wassmann called Feldhus's secretary and asked her to leave messages for Feldhus that Wassmann would not meet without a union representative. Feldhus, after receiving the message from her secretary, called Schmeidler and invited her to the meeting. Wassmann allowed Schmeidler into her office and they spoke for about 10 minutes while Feldhus and Graham waited outside.

Wassmann and Schmeidler met with Feldhus and Graham to discuss Wassmann locking her office door. Feldhus later directed Wassmann to post a sign on her closed door stating that Wassmann was inside and available during normal working hours. Wassmann did not post the sign but instead would put up a small label stating the "door is unlocked."

In September 2009, Feldhus had assigned Wassmann the project of updating the library's audio-visual collection. On February 9, 2010, Feldhus observed Wassmann working on the audio-visual collection project. According to Feldhus, Wassmann demonstrated a lack of understanding of the project and a lack of a plan for completing it, and failed to use staff for the project, as she had been directed to do.

6

Feldhus learned at a staff meeting on February 9, 2010, which Wassmann did not attend, that Wassmann had not made any significant progress on the assignment. Feldhus informed Wassmann that Feldhus and Sinegal were going to devise an action plan for the project and instructed Wassmann not to do anything further until she heard from Feldhus. Wassmann responded with an e-mail stating, "By rights shouldn't I be included in this planning process? I am a faculty member." Wassmann sent an e-mail to another faculty member asking for input on the audio-visual assignment. Feldhus again directed Wassmann to do nothing further on the assignment. Feldhus viewed Wassmann's actions as rude, disrespectful, and unprofessional.

On February 10, 2010, Wassmann received a written performance evaluation review from Feldhus. In five areas, Wassmann's performance was rated as "Requires Improvement," which means "Faculty member performs below professional standards."

Wassmann met with Feldhus and Schmeidler on February 12, 2010 to discuss the performance evaluation review. Wassmann prepared a draft response to the performance evaluation review; Schmeidler reviewed the draft and proposed several changes, posed questions, and inserted comments. Wassmann incorporated Schmeidler's changes into the draft response and e-mailed the revised draft to Schmeidler. Schmeidler reviewed Wassmann's revised draft, proposed more changes, posed questions, and inserted comments into the document for Wassmann to review.

On February 22, 2010, Feldhus reminded Wassmann by e-mail of the policy that she needed to notify the circulation desk of her whereabouts if she stepped away from the reference desk. On the same day, Wassmann left the reference desk, but, rather than contact the circulation desk, asked Sinegal to cover for her. Sinegal told Wassmann that she did not need to ask for coverage, but only had to notify the circulation desk of leaving the reference desk. Wassmann became agitated, did not notify the circulation desk and, instead, put up a sign saying she would be away.

7

The next day, Wassmann met with Feldhus, Graham, and Schmeidler to discuss issues regarding Wassmann's office door and the status of the audio-visual project. Immediately after the meeting, Graham e-mailed Wassmann a link to the District's harassment policy and complaint procedure and a different link to the District's discrimination complaint form.

Wassmann was routinely late with submitting her required monthly reports. She did not submit reports for December 2009 and January 2010 until March 1, 2010. She was absent from work five days in August 2009, 2.5 days in September 2009, five days in October 2009, three days in December 2009, 2.5 days in January 2010, 4.5 days in February 2010, and 2.5 days in March 2010.

## V.

### The Notice to Correct Deficiencies

On March 29, 2010, IVC President Glenn Roquemore issued Wassmann a "Notice to Correct Deficiencies – Unsatisfactory Performance and Unprofessional Conduct" pursuant to Education Code sections 87732 and 87734 (the Notice to Correct). The Notice to Correct addressed 18 events deemed to constitute unsatisfactory performance or unprofessional conduct by Wassmann and was supported by 32 exhibits. The Notice to Correct reiterated the issues previously identified in the September 2009 Notice and added others, including Wassmann's: (1) failure to attend staff meetings; (2) refusal to assist with job interviews; (3) failure to satisfy "flex" requirements that were part of the collective bargaining agreement; (4) performance on the audio-visual assignment; (5) refusal to meet with Feldhus and Graham on February 8 without a union representative; (6) failure to place the proper notice on her door when it was shut; (7) failure to notify the circulation desk when leaving her post at the reference desk; (8) routine submission of late monthly reports; (9) use of the wrong format for the spring

8

schedule; (10) excessive absences from work; and (11) continued discourteous, disrespectful, and insubordinate behavior toward Sinegal.

After receiving the Notice to Correct, Wassmann understood that her employment could be terminated if she did not improve her job performance. She testified at her deposition she believed all but two issues (incorrect formatting of documents and untimely schedules) identified in the Notice to Correct were "fabricated," she did not change her attitude after receiving the Notice to Correct because "[t]here wasn't anything wrong with my attitude," and she continued to perform her job duties in the same manner as she had done before receiving the Notice to Correct.

## VI.

### Incidents of Unprofessional Conduct and Unsatisfactory Performance, April through October, 2010

In early April 2010, Feldhus asked Wassmann to assist in creating a survey for students using the reference desk. Wassmann refused to meet with Feldhus without a union representative. Feldhus informed Wassmann that a union representative was not necessary because the meeting was not disciplinary; however, Wassmann still refused to meet with Feldhus.

On April 12, 2010, Wassmann received an e-mail from Feldhus requesting to meet with her the next day regarding her "continued insubordinate behavior." Feldhus advised Wassmann to bring her union representative because the meeting was to be disciplinary in nature. Wassmann forwarded the e-mail to Schmeidler that same day, and Schmeidler responded by asking Wassmann to come by her office and meet with her separately before their meeting with Feldhus. Wassmann met with Schmeidler on April 13 and discussed Feldhus's expectations of her. Wassmann and Schmeidler then met with Feldhus and Graham. Feldhus told Wassmann she needed to carry out assigned tasks to the best of her ability and was required to meet with Feldhus or Sinegal to discuss assignments.

9

Feldhus informed Wassmann she would be observing Wassmann on May 17 for purposes of an evaluation in connection with the Notice to Correct. During the evaluation, Wassmann refused directives about keeping her door closed and posting office hours, and did not produce a course syllabus that Feldhus had requested on two prior occasions. Later that day, Wassmann left the reference desk without informing anyone. After waiting 10 minutes for Wassmann at the reference desk, Feldhus went to Wassmann's office. There was a label by the door saying "door is unlocked," but when Feldhus tried to open the door, it was locked and the lights inside were off. Wassmann, who was in her office, opened the door a crack, said "just a moment," then tried to shut the door in Feldhus's face.

In May 2010, there was another incident in which Wassmann became angry when speaking to Feldhus about Sinegal. In August, Wassmann attended a staff meeting but sat in the back, wore sunglasses, and did not participate. Wassmann sent another disrespectful e-mail to Sinegal, failed to fill out the proper form for taking time off, and refused to correct inaccuracies in her fall schedule. On August 30, Feldhus again had to direct Wassmann to keep her office door open during work hours. Nonetheless, on September 24, another IVC professor found Wassmann's door closed.

In late September 2010, Feldhus informed Wassmann that Feldhus would be evaluating her on October 5. Wassmann did not want to be evaluated on October 5 and went home sick that day. Feldhus notified Wassmann the evaluation would be conducted on October 6 instead. When Feldhus went to evaluate Wassmann on October 6, she was not at the reference desk, her assigned workstation. When Feldhus found Wassmann about 15 minutes later, Wassmann loudly announced, in front of students, "I'm not doing it today." Feldhus asked Wassmann to lower her voice because students were listening. Wassmann again loudly announced "I'm not doing it today" and asked to reschedule the evaluation to October 7. When Feldhus said she would not be available on

October 7, Wassmann again said she was "not doing it" and went into her office to call Schmeidler.

When Feldhus returned to Wassmann's office 10 minutes later, the door was locked shut and the lights inside were off. Feldhus told Wassmann that she needed to be at the reference deck. Wassmann slammed the door in Feldhus's face. A short time later, Wassmann went to the reference desk but left for the day at 11:05 a.m.

Wassmann met with Schmeidler on October 7. Schmeidler recommended that Wassmann schedule an appointment with her doctor due to the stress caused by her employment issues. Schmeidler suggested to Wassmann that she get a note from her doctor and take medical leave to relieve her work-related stress. Wassmann did not follow Schmeidler's recommendation.

At about the same time, Schmeidler suggested that Wassmann retain an attorney with Group Legal Services Program offered by the California Teachers Association (CTA). A CTA representative confirmed the CTA's desire to support Wassmann and advocate on her behalf. Wassmann agreed to have CTA provide her with legal counsel paid by the CTA, and an attorney was assigned to her.

## VII.

### Statement of Charges

On November 4, 2010, the District issued a Statement of Charges against Wassmann. The Statement of Charges recommended dismissal for unprofessional conduct (Ed. Code, § 87732, subd. (a)), unsatisfactory conduct (*id.*, subd. (c)), and evident unfitness for service (*id.*, subd. (d)). On November 15, the District placed Wassmann on immediate paid administrative leave. Several days later, Wassmann submitted a letter to Roquemore and two separate responses (called "rebuttals") to the Statement of Charges. In the letter, which had not been reviewed by her attorney, Wassmann claimed that "[s]ince Dean Feldhus has come back to IVC, she has disliked

11

me for reasons other than my performance, and has acted in a hostile and discriminatory manner towards me which has resulted in these [largely] fabricated charges."

Wassmann met with her attorney and Schmeidler to discuss how to respond to the charges. During this meeting, Wassmann brought up the issue of race. She and Schmeidler also discussed the possibility of settling Wassmann's employment dispute by having Wassmann enter into a so-called "Last Chance Agreement," which would have provided Wassmann with an opportunity to avoid dismissal. As a condition of entering into a Last Chance Agreement, the District requested that Wassmann go on medical leave for the rest of the 2010-2011 academic year and during that period receive some form of mental health care before returning at the start of the 2011-2012 academic year. Wassmann ultimately rejected the District's proposal.

Wassmann was also offered the possibility of entering the District's "Survive and Thrive" program, which was a sabbatical retreat designed to treat teacher burnout. Wassmann declined the offer because, she testified at her deposition, "I wasn't suffering from teacher burnout."

## VIII.

### The District's Decision to Dismiss Wassmann and the Administrative Hearing

On March 28, 2011, the District's board of trustees met and authorized a "Statement of Decision to Dismiss" to formally terminate Wassmann's employment "effective thirty (30) days from March 28, 2011." The Statement of Decision to Dismiss was based on the charges set forth in the Statement of Charges; that is, unprofessional conduct, unsatisfactory conduct, and evident unfitness for service. The next day, the District served Wassmann with a "Notice of Decision to Dismiss" notifying Wassmann of her right to request a hearing. Wassmann was officially dismissed from her employment on April 28, 2011.

12

After receiving the Notice of Decision to Dismiss, Wassmann met with Schmeidler to discuss options. They concluded that Wassmann would contest the District's decision to terminate her employment by requesting a hearing before the Office of Administrative Hearings.

On April 7, 2011, Wassmann filed a Notice of Objection to the Statement of Charges. An administrative hearing was conducted over five days in January 2012. An administrative law judge from the Office of Administrative Hearings presided, witnesses testified and were cross-examined, documentary evidence was received, and the parties submitted written closing briefs. Wassmann was represented by counsel, and Schmeidler testified on her behalf.

At her deposition, Wassmann testified that she raised the issue of racial discrimination, but not age discrimination, during the administrative hearing. Schmeidler and Long assert in this appeal that "a review of the transcripts from Wassmann's week-long termination hearing reveals that they contain no record of Wassmann ever raising the issue of race- or age-based discrimination, harassment, or hostile work environment."

In August 2012, the administrative law judge issued a 20-page decision upholding the District's decision to dismiss Wassmann from employment. The administrative law judge made extensive findings (60 separate findings in all) that effectively upheld all of the charges made by the District. The judge concluded that Wassmann had engaged in unprofessional conduct, her performance was unsatisfactory, and she was unfit for service. The decision does not refer to any claims based on racial discrimination, age discrimination, harassment, or hostile work environment.

## IX.

### Petition for Writ of Mandate and DFEH Charge

Wassmann challenged the administrative law judge's decision in October 2012 by filing a petition for writ of mandate in the superior court. In the petition, she

13

argued the administrative law judge's factual findings were not supported by the weight of the evidence. She did not raise racial discrimination, age discrimination, or harassment.

In late August 2013, the superior court issued an order denying Wassmann's petition for writ of mandate. The court found that Wassmann "failed to establish that the Administrative Law Judge's decision was against the weight of the evidence," that "[t]he decision was supported by the findings and the findings were supported by the evidence," and that "[t]here was substantial evidence in light of the whole record to support the findings." The court found "[t]he record is replete with instances of repeated violations of rules, multiple conflicts with supervisors and numerous failures to perform assignments."

In December 2013, Wassmann filed a discrimination charge with the DFEH and requested a right to sue notice. The charge alleged: "I believe I was discriminated, harassed and retaliated which lead [*sic*] to my termination, due to age, 55, race, African[-]American, and color, Black." Wassmann named only the District Defendants as respondents in the charge. The DFEH issued Wassmann a right to sue notice. At Wassmann's request, the DFEH amended the charge to include Long and Schmeidler.

## PROCEDURAL HISTORY

Wassmann filed this lawsuit in December 2013 after receiving the right to sue notice from the DFEH. The second amended complaint asserted six causes of action: (1) age discrimination, (2) racial discrimination—disparate treatment, (3) harassment (hostile environment), (4) wrongful termination, (5) intentional infliction of emotional distress, and (6) unfair business practices. The first, second, fourth and sixth causes of action were against only the District Defendants. The third and fifth causes of action were against all Defendants. Wassmann alleged that, as a proximate result of Defendants' discriminatory conduct, she suffered: (1) loss of employment and

14

employment benefits; (2) loss of "employment-related opportunities;" and (3) "humiliation, mental anguish, emotional and physical harm."

The District Defendants filed a motion for summary judgment, alternatively seeking summary adjudication of issues. Long and Schmeidler also filed a motion for summary judgment, alternatively seeking summary adjudication of issues. Wassmann filed extensive opposition to both motions.

By minute order, the trial court granted both motions for summary judgment. As to the District Defendants, the court concluded that Wassmann's first, second, and third causes of action were barred for failure to exhaust administrative remedies and by res judicata, and the fifth cause of action failed because it was derivative of the first three causes of action and was barred by statute of limitations. As to Long and Schmeidler, the court concluded that Wassmann's third cause of action was barred for failure to exhaust administrative remedies, and the fifth cause of action failed because it was derivative of the first three causes of action and was barred by the statute of limitations. In addition, the court found that Wassmann had not, in effect, opposed Long and Schmeidler's motion because her separate statement failed to comply with Code of Civil Procedure section 437c, subdivision (b)(3).

Wassmann filed a notice of appeal before entry of judgment. We ordered Wassmann to obtain a signed and entered judgment or face dismissal of her appeal. In June 2016, a joint judgment in favor of Defendants was entered. The reasons recited in the judgment for the court's decision are the same as those in the minute order except that, as to Long and Schmeidler, the court added that collateral estoppel barred Wassmann's claim that they aided and abetted the District Defendants' violation of FEHA.

15

## MOTION TO STRIKE WASSMANN'S
## OPENING BRIEF

The District Defendants filed a motion to strike Wassmann's opening brief. They argue the brief should be stricken for procedural deficiencies including failure to (1) include a statement of appealability, (2) state the nature of the action and relief sought in the trial court, (3) organize the brief by topic headings, (4) properly cite to the record, and (5) cite to applicable legal authority. The District Defendants repeat these arguments in their respondents' brief.

We deny the motion to strike Wassmann's opening brief even though it is deficient in many of the ways identified. We can with little difficulty discern the basis for appealability, the nature of the action, and the relief sought in the trial court. Wassmann's failure to organize the brief by topic headings, to accurately cite to the record, and to cite to applicable legal authority, impairs the persuasive value of her brief, but that is a matter better dealt with in addressing the merits of the appeal.

## WASSMANN'S REQUEST FOR JUDICIAL NOTICE

Wassmann filed a request for judicial notice of 77 items, attached as exhibits A through XXX to the request. We grant the request as to Exhibit A and Exhibit PPP based on Evidence Code section 451, subdivision (a), as statutory law of the State of California. We deny the request for judicial notice of the other items because each of them falls into at least one of these categories: (1) it is not a matter of which we may take judicial notice (*id.*, §§ 450, 451, 452); (2) it is irrelevant (*id.,* § 350); (3) it is not properly authenticated (*id.*, §§ 453, subd. (b), 1400, 1401, subd. (a)); and (4) it already is part of the record on appeal. In addition, the request for judicial notice does not comply with rule 8.252(a)(2), California Rules of Court.

16

## DISCUSSION

### I.

### Standard of Review

A trial court properly grants summary judgment if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

### II.

### Wassmann's FEHA Claims Are Barred by Res Judicata or Collateral Estoppel and by Failure to Exhaust Administrative Remedies.

"FEHA affords California employees broad protections against discrimination, harassment, and retaliation on any of a wide range of impermissible bases." (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 106, fn. omitted. (*McDonald*)) Wassmann brought three causes of action under FEHA: (1) racial discrimination (Gov. Code, § 12940, subd. (a)); (2) age discrimination (*ibid*.); and (3) harassment (*id*., subd. (j)(1)).

A. *Res Judicata and Collateral Estoppel*

The trial court found, and the District Defendants argue, that Wassmann's causes of action for racial discrimination, age discrimination, and harassment are barred under principles of res judicata. Long and Schmeidler argue that Wassmann's cause of action against them for harassment is barred by principles of collateral estoppel. We

17

conclude that all of Wassmann's claims seeking recovery for employment termination are barred by the administrative law judge's decision and the judgment denying Wassmann's petition for writ of mandate.

The doctrine of res judicata or claim preclusion dictates that in ordinary circumstances a final judgment on the merits prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The doctrine of collateral estoppel or issue preclusion prevents "the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*Ibid.*) "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*Ibid.*)

Res judicata encompasses "'matters which were raised or could have been raised, on matters litigated or litigable'" in the prior action. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975.) "'"The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent."'" (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 575.) "'"If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged."'" (*Id.* at p. 576.)

To understand why the administrative law judge's decision and the judgment on Wassmann's petition for writ of mandate are conclusive in this lawsuit on

18

all issues arising out the termination of Wassmann's employment,[2] it necessary to consider, first, the statutory scheme governing dismissal of community college faculty and, second, the doctrine of exhaustion of judicial remedies.

Part 51, Chapter 3, Article 4 of the Education Code sets out a comprehensive scheme governing "the evaluation of, the dismissal of, and the imposition of penalties on, community college faculty." (Ed. Code, § 87660.) "The Education Code sets forth due process rights granted to community college faculty members in disciplinary matters, including the right to notice, opportunity to object, a hearing before an arbitrator or administrative law judge, and a decision by the governing board. ([Ed. Code,] §§ 87669, 87672–87674, 87678–87680.)" (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1492.)

As relevant here, a community college faculty member may be dismissed for "[i]mmoral or unprofessional conduct," "[u]nsatisfactory performance," or "[e]vident unfitness for service." (Ed. Code, § 87732, subds. (a), (c) & (d); see *id*., § 87667 ["a contract or regular employee may be dismissed . . . for one or more of the grounds set forth in Section 87732"].) If a community college decides to dismiss an employee, the first step is for the college's governing board to deliver to the employee "a written statement, duly signed and verified . . . setting forth the complete and precise decision of the governing board and the reasons therefor." (Ed. Code, § 87672.) The District complied with section 87672 by issuing and delivering to Wassmann the Statement of

---

[2] In *State Bd. of Chiropractic Examiners v. Superior Court* (*Arbuckle*) (2009) 45 Cal.4th 963 the California Supreme Court concluded the Legislature intended that an administrative finding not be given preclusive effect in a subsequent civil lawsuit involving a whistleblower claim alleged by a state agency employee under the California Whistleblower Protection Act, Government Code sections 8547 through 8547.11. Wassmann did not allege a whistleblower claim and therefore the principle of *Arbuckle* does not bar giving preclusive effect to the administrative law judge's decision.

19

Decision to Dismiss charging her with unprofessional conduct, unsatisfactory performance, and evident unfitness.

The next step is for the employee to decide whether to challenge the decision of the community college district's governing board. Education Code section 87673 states: "If the employee objects to the decision of the governing board, or the reasons therefor, *on any ground*, the employee shall notify, in writing, the governing board, the superintendent of the district which employs him or her, and the president of the college at which the employee serves of his or her objection within 30 days of the date of the service of the notice." (Italics added.) The italicized phrase is important because it suggests the employee may object to the statement of decision to dismiss on grounds not encompassed within the statement itself. Wassmann timely objected to the District's statement of decision to dismiss, and demanded a hearing.

If, as in this case, the employee objects to the decision of the governing board, a hearing is conducted. (Ed. Code, § 87674.) The hearing is conducted by an agreed-upon arbitrator unless the parties cannot reach agreement on one, in which case, the governing board certifies the matter to the Office of Administrative Hearings and requests the appointment of an administrative law judge. (*Id.*, § 87678.) In this case, an administrative law judge was appointed.

The administrative law judge must conduct proceedings in accordance with Chapter 5, Part 1, Division 3, of Title 2 of the Government Code, with the exception that the parties have the same rights and duties to discovery as any party in a civil action. (Ed. Code, § 87679.)

The administrative law judge conducts a full evidentiary hearing at which witnesses must testify under oath. (Ed. Code, § 87680.) At the close of the hearing, the administrative law judge "shall determine whether there is cause to dismiss or penalize the employee" and, if the judge finds cause, then the judge must "determine whether the employee shall be dismissed and determine the precise penalty to be imposed." (*Ibid.*)

20

In this case, an evidentiary hearing was conducted over five days and the administrative judge issued a 20-page ruling upholding the District's decision to terminate Wassmann's employment.

The administrative law judge's decision is subject to judicial review by petition for writ of mandate. "The decision of the arbitrator or administrative law judge, as the case may be, may, on petition of either the governing board or the employee, be reviewed by a court of competent jurisdiction in the same manner as a decision made by an administrative law judge under Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." (Ed. Code, § 87682.) In the mandate proceeding, the superior court "shall exercise its independent judgment on the evidence." (*Ibid.*) Wassmann challenged the administrative law judge's decision by bringing a petition for writ of mandate in the superior court. The superior court, exercising its independent review of the evidence, denied the petition, and judgment was entered in favor of the District Defendants.

"Under the doctrine of exhaustion of judicial remedies, '[o]nce a[n administrative] decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. [Citation.] Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims. [Citation.]' [Citation.] Generally speaking, if a complainant fails to overturn an adverse administrative decision by writ of mandate, 'and if the administrative proceeding possessed the requisite judicial character [citation], the administrative decision is binding in a later civil action brought in superior court.'" (*Runyon v. Board of Trustees of California State University* (2010) 48 Cal.4th 760, 773; see *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 76 (*Johnson*) ["when, as here, a public employee pursues

21

administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA"].)

Wassmann exhausted her judicial remedies by filing a petition for writ of mandate to challenge the administrative law judge's decision. She did not, however, succeed in overturning that decision. Thus, the administrative law judge's decision (as upheld by the superior court judgment) had preclusive effect in this lawsuit if the administrative law proceeding "'possessed the requisite judicial character.'" (*Runyon v. Board of Trustees of California State University, supra*, 48 Cal.4th at p. 773.)

"For an administrative decision to have collateral estoppel effect, it and its prior proceedings must possess a judicial character. [Citation.] Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944.)

The administrative law proceedings in this case bore all of those indicia: The hearing was conducted by an impartial decisionmaker appointed by the Office of Administrative Hearings; testimony was given under oath (as Education Code section 87680 requires); each party could subpoena, examine, and cross-examine witnesses; each party was able to and did make written and oral arguments; the entire proceeding was reported and transcribed; and the administrative law judge issued a lengthy statement of decision. In addition, Wassmann had full rights of discovery. Because the administrative hearing had the requisite judicial character, the administrative law judge's decision, and the superior court judgment upholding it, has preclusive effect in this lawsuit.

22

Which issues are precluded by the administrative law judge's decision? The administrative law judge's findings that Wassmann had engaged in unprofessional conduct, her performance was unsatisfactory, and she was unfit for service are binding and preclusive in later civil actions. (*Johnson, supra*, 24 Cal.4th at pp. 65, 69-70; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 484.) In addition, as we have explained, Education Code section 87673 states the employee must notify the community college governing board if the employee objects to its decision or its reasons "*on any ground*." This passage means the administrative law hearing encompasses any and all grounds on which the employee challenges the governing board's decision, including claims of discrimination or harassment.

Thus, in the administrative hearing, Wassmann could have raised her claims of racial discrimination, age discrimination, and harassment as grounds for a finding of lack of cause to dismiss her. (*Busick v. Workmen's Comp. Appeals Bd., supra*, 7 Cal.3d at p. 975.) She did not do so. She testified at her deposition that she did raise racial discrimination in the administrative proceedings, but, if that were true, she failed to exhaust her judicial remedy because she did not raise racial discrimination in her petition for writ of mandate. The administrative law judge's findings are, therefore binding against Wassmann on her claims under FEHA for wrongful termination based on race and age, and harassment.

Although Long and Schmeidler were not parties to the administrative hearing, they may invoke collateral estoppel defensively to bar Wassmann from "asserting a claim that [she] had previously litigated and lost against another defendant." (*Parklane Hosiery Co., Inc. v. Shore* (1979) 439 U.S. 322, 329.) As the trial court found, Wassmann is collaterally estopped from alleging Long and Schmeidler aided and abetted the District Defendants in violating FEHA because Wassmann litigated and lost her claim that the District Defendants lacked cause to dismiss her.

23

*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477 (*Castillo*) illustrates the interaction between principles of exhaustion of judicial remedies and res judicata or collateral estoppel under facts similar to those presented here. In *Castillo, supra*, at page 479, the plaintiff was dismissed for cause from his position with the defendant city. The plaintiff appealed his dismissal to the county civil service commission, which conducted an evidentiary hearing. (*Ibid.*) At the hearing, the plaintiff presented evidence of lack of cause but did not assert disparate treatment based on age, race, or national origin. (*Id.* at p. 482.) The hearing examiner concluded the plaintiff's dismissal was "'appropriate.'" (*Ibid.*) The plaintiff filed a petition for writ of mandate in the superior court seeking review of the administrative decision. (*Id.* at p. 479.) While the petition was pending, the plaintiff obtained a notice to sue letter from the DFEH and sued the defendant under FEHA for wrongful termination based on age, race, and national origin. (*Id.* at p. 480.) After the superior court denied the plaintiff's writ petition, the defendant moved for, and the trial court granted, summary judgment based on "principles that bar relitigation." (*Id.* at pp. 480, 481.)

The Court of Appeal affirmed based on collateral estoppel and exhaustion of judicial remedies. The court explained: "When judicial remedies have been exhausted, the administrative finding has either been upheld or set aside. If the administrative finding is upheld, or if it is never challenged judicially, it is 'binding on discrimination claims under the FEHA.' [Citation.] . . . [W]here 'an administrative process provides internal remedies,' an administrative finding is binding unless reversed through the judicial process." (*Castillo, supra*, 92 Cal.App.4th at p. 485.) The hearing examiner's decision was final on the merits and binding once the superior court denied the plaintiff's petition for writ of mandate and the time for appeal of the denial had passed. (*Id.* at pp. 482-483, 486.) At the administrative hearing, the plaintiff could have introduced admissible evidence that his dismissal was the result of unlawful discrimination. (*Id.* at p. 482.) Because the hearing examiner had found the plaintiff's

dismissal was appropriate, the examiner necessarily found the dismissal was for proper reasons and not a pretext for discrimination. (*Ibid.*)

The *Castillo* court concluded the hearing examiner's finding (that the plaintiff's discharge from employment was not wrongful) was binding on the plaintiff's FEHA claims and could not be relitigated. (*Castillo, supra*, 92 Cal.App.4th at p. 486.) As a consequence, the plaintiff could not claim his employment termination was wrongful and the defendant was entitled to judgment as a matter of law. (*Id.* at pp. 486-487.)

Here, the administrative law judge's decision and the superior court judgment are binding on all claims and issues related to whether the District had cause to dismiss Wassmann. She, like the plaintiff in *Castillo*, had the opportunity to present evidence of unlawful discrimination to show the District's decision to dismiss her was without cause and the District's reasons were a pretext. Because the administrative law judge in this case, as his counterpart in *Castillo*, found there was cause to dismiss, the judge necessarily found that her dismissal was for proper reasons and not wrongful. The administrative law judge's findings became binding once the superior court denied Wassmann's petition for writ of mandate and the time for her to appeal that denial had passed. The administrative law judge's finding that Wassmann's dismissal was proper and binding on Wassmann's FEHA claims and could not be relitigated. Thus, res judicata or collateral estoppel bars Wassmann's discrimination and harassment claims in this lawsuit to the extent they seek redress for the injury of her employment termination.

B. *Failure to Exhaust Administrative Remedies*

But the administrative law judge's decision (and the superior court judgment upholding it) only dealt with the District's decision to dismiss Wasserman. Res judicata would not bar claims of discrimination and harassment to the extent they sought

25

recovery for harm caused by injuries other than loss of employment.[3] It is not clear whether Wassmann sought recovery for injuries other than loss of employment. She alleged that Defendants' actions caused her to suffer the "loss of her annual salary and benefits," to lose "employment-related opportunities," and to suffer "humiliation, mental anguish, emotional and physical harm." The second amended complaint does not clarify whether the latter two forms of injury were solely derivative of, or were separate and distinct from, her loss of employment.

In any case, Wassmann's discrimination and harassment claims, to the extent they sought redress for an injury other than termination of employment, are barred for failure to exhaust administrative remedies. The trial court concluded that Wassmann had failed to exhaust her administrative remedies because she did not timely file a charge with the DFEH.

Before bringing a lawsuit for FEHA violations, an aggrieved employee must exhaust administrative remedies by timely filing an administrative complaint with the DFEH and receiving a right to sue notice. (Gov. Code, §§ 12960, subd. (b), 12962, subd. (c).) Exhaustion of administrative remedies is "'a jurisdictional prerequisite to resort to the courts.'" (*Johnson, supra*, 24 Cal.4th at p. 70.) The administrative complaint must be filed with the DFEH within one year of the date on which the alleged unlawful practice occurred. (Gov. Code, § 12960, subd. (d).) "[O]rdinarily, a plaintiff cannot recover for acts occurring more than one year before filing of the DFEH complaint." (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1402.)

---

[3] For purposes of res judicata, a cause of action is "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.) One injury gives rise to a single claim for relief even if liability might be predicated on several legal theories. (*Ibid.*) "Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Ibid.*)

Wassmann obtained a right to sue notice from the DFEH in December 2013. But any injury Wassmann might have suffered for race discrimination, age discrimination, or harassment by the District Defendants, Long, or Schmeidler would have occurred on or before April 28, 2011, the date on which her employment with the District ended. Wassmann testified at her deposition the District Defendants did not engage in any discriminatory or harassing conduct against her between April 28, 2011 and August 20, 2013, that her last contact with Long was in fall 2010, and that her last contact with Schmeidler was in spring 2011. Because Wassmann did not bring an administrative complaint before the DFEH within one year of April 28, 2011, she failed to exhaust administrative remedies for claims of discrimination and harassment seeking recovery for injuries other than loss of employment.

Wassmann suggests the District Defendants continued to engage in unlawful conduct after her dismissal date by submitting falsified evidence at the administrative hearing and opposing her petition for writ of mandate. Under the continuing violation doctrine, a plaintiff may recover for unlawful acts occurring outside the limitations period if they continued into that period. (*Jumaane v. City of Los Angeles, supra*, 241 Cal.App.4th at p. 1402.) The continuing violation doctrine requires proof that (1) the defendant's actions inside and outside the limitations period are sufficiently similar in kind; (2) those actions occurred with sufficient frequency; and (3) those actions have not acquired a degree of permanence. (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802.)

The continuing violation doctrine does not help Wassmann. The alleged acts of discrimination and harassment occurring outside the limitations period (before December 2011) and inside the limitation periods (after December 2011) are not at all similar. The District Defendants' alleged acts of discrimination and harassment "acquired a degree of permanence" in April 2011, when Wassmann's employment was terminated.

27

Indeed, the last wrongful act alleged in the second amended complaint was Wassmann's employment termination in April 2011. The second amended complaint does not allege any acts of discrimination or harassment occurring after that date. Wassmann could not defeat summary judgment with evidence of events after April 2011 because the allegations of the second amended complaint framed the issues for the summary judgment motions. (*Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 197.) Wassmann contends the administrative law judge engaged in discrimination against her by issuing a decision based on "unfounded and false" accusations and information. The administrative law judge is not, however, an employee or agent of the District.

Wassmann's pursuit of administrative remedies for the termination of her employment did not toll the time for filing a complaint with the DFEH for discrimination and harassment leading to other injuries. The time for filing a DFEH complaint is equitably tolled while the employee pursues an administrative remedy, whether or not exhaustion of that remedy is a prerequisite to filing suit. (*McDonald, supra*, 45 Cal.4th at pp. 96, 106-108.) However, in her administrative proceeding, Wassmann pursued a remedy only for the termination of her employment and not for any other injury brought about by the Defendants' allegedly unlawful conduct. If Wassmann had claims of injury other than loss of employment, she had to file a DFEH complaint on those claims within one year of when the injury occurred, in no event later than one year from April 28, 2011.

## III.

## Wassmann's Cause of Action for Intentional Infliction of Emotional Distress Is Time-Barred.

In the fifth cause of action, for intentional infliction of emotional distress,[4] Wassmann alleged: "Commencing in July 2009, and continuing to [Wassmann]'s termination in April 2011, Defendants engaged in severe and/or pervasive harassing conduct based upon [Wassmann]'s race. [Wassmann] was continuously reprimanded, followed even into the restroom, ordered to sit by the bathroom with her office door to remain open to continuously smell foul odors, constantly evaluated, and forced into impromptu meetings which created a hostile environment." Wassmann alleged that, as a result of Defendants' "intentional, extreme, and outrageous conduct," she suffered "extreme emotional and physical distress, including humiliation, mental anguish, emotional and physical distress, and has been injured in her mind and body."

The trial court sustained without leave to amend Long and Schmeidler's demurrer to Wassmann's intentional infliction of emotional distress cause of action alleged in the first amended complaint. (The court had overruled the District Defendants' demurrer to that cause of action). The court later granted summary judgment on the intentional infliction of emotional distress cause of action in the second amended complaint. Long and Schmeidler argue that as to the fifth cause of action it is unclear whether Wassmann is challenging the order sustaining the demurrer without leave to amend or the summary judgment.

---

[4] The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engages in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffers severe or extreme emotional distress; and (3) the defendant's outrageous conduct is the actual and proximate cause of the plaintiff's emotional distress. (*Hughes v. Pair, supra*, 46 Cal.4th at p. 1050.)

Wassmann's notice of appeal encompasses all nonappealable orders made before entry of judgment. (Code Civ. Proc., § 906; see *Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 668-669.) In her appeal, Wassmann therefore may challenge the order sustaining without leave to amend Long and Schmeidler's demurrer to the fifth cause of action in the first amended complaint.

Under either the standard for reviewing orders sustaining demurrers or for granting summary judgment, Wassmann's cause of action for intentional infliction of emotional distress is time-barred. Intentional infliction of emotional distress has a two-year statute of limitations. (Code Civ. Proc., § 335.1; *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1450.) "A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 889.)

According to the allegations of the second amended complaint and the undisputed evidence submitted in connection with the motions for summary judgment, Wassmann began suffering emotional distress from alleged acts of discrimination and harassment no later than April 28, 2011, when her employment was officially terminated and she last had contact with the District Defendants.[5] She did not file this lawsuit until nearly 32 months later, in December 2013. The statute of limitations on common law claims is not tolled while DFEH charges are pending because the aggrieved employee can simultaneously pursue statutory and common law remedies. (*Mathieu v. Norrell*

---

[5] In a declaration submitted in opposition to the District Defendants' motion for summary judgment, Wassmann stated that as early as July 2009 she was "frightened by [Feldhus's] aggressive and hostile behavior towards me" and when she received the statement of charges, "was increasingly fearful." Wassmann testified at her deposition she had no interactions with any of the District Defendants after April 28, 2011 except in connection with the administrative hearing, and her last contact with Long was in the fall of 2010. Schmeidler declared that her last dealings with Wassmann were in spring of 2011.

*Corp.* (2004) 115 Cal.App.4th 1174, 1189.) An aggrieved employee may proceed directly to court on common law claims without receiving a right to sue notice from the DFEH. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 88.)

The statute of limitations on Wassmann's cause of action for intentional infliction of emotional distress also was not equitably tolled while the Education Code administrative procedure was pending. "Where applicable, the doctrine [of equitable tolling] will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" (*McDonald, supra*, 45 Cal.4th at p. 99.) "Broadly speaking, the doctrine applies '"[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one."'" [Citations.] Thus, it may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." (*Id.* at p. 100.)

Equitable tolling applies to claims under FEHA during the period in which the plaintiff exhausts administrative remedies or when the plaintiff voluntarily pursues an administrative remedy or nonmandatory grievance procedure, even if exhaustion of that remedy is not mandatory. (*McDonald, supra,* 45 Cal.4th at pp. 110-111.) Wassmann's claim of intentional infliction of emotional distress is not a FEHA claim, but a common law claim, for which the administrative proceeding could not provide a legal remedy. The issue presented in the administrative proceeding was "whether there [was] cause to dismiss or penalize [Wassmann]." (Ed. Code, § 87680.) Although Wassmann could have raised any claims related to the issue of cause for dismissal, intentional infliction of emotional distress is not the same because, even if proved, it would not in and of itself disprove cause for dismissal. The only remedy sought for intentional infliction of emotional distress—damages—could not have been awarded by the administrative law judge. (*Ibid.*)

31

The Education Code provisions regarding dismissal of community college employees do not state, either directly or by implication, that they preempt common law rules or remedies. On the contrary, by limiting the arbitrator's decision to whether there was cause to dismiss or penalize the employee, and by denying the arbitrator the ability to award damages, it seems to us the Education Code expresses a legislative intent not to abrogate a community college employee's common law remedies. (See *McDonald, supra*, 45 Cal.4th at p. 110.) The flip side of that proposition, as it applies here, is that Wassmann could have pursued a lawsuit for intentional infliction of emotional distress simultaneously with the administrative proceeding. She had to bring her cause of action for intentional infliction of emotional distress within two years of the time at which that cause of action accrued, and the statute of limitations was not tolled while the administrative proceeding was pending.

## DISPOSITION

The judgment is affirmed. In the interest of justice, no party may recover costs on appeal.


FYBEL, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

32

Filed 6/21/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CAROL E. WASSMANN, | |
|    Plaintiff and Appellant, | G053411 |
|      v. | (Super. Ct. No. 30-2013-00692313) |
| SOUTH ORANGE COUNTY COMMUNITY COLLEGE DISTRICT et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
|    Defendants and Respondents. | |

       Defendants and Respondents South Orange County Community College District, Karima Feldhus, Robert Brumucci, and Glenn Roquemore have requested that our opinion, filed June 12, 2018, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, ruled 8.1105(c)(2), (4), and (6). The request is GRANTED. The opinion is ordered published in the Official Reports.

                        FYBEL, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.