Filed 11/12/25  Ogah v. University of Southern Cal. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EMERY OGAH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA,<br><br>    Defendant and Appellant. | B344610<br><br>(Los Angeles County Super. Ct. No. 24STCV20884) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed.

Horvitz & Levy, Scott P. Dixler, Jeremy B. Rosen and Sheridan L. Caldwell; Burke, Williams & Sorensen, Nathan A. Oyster, Caylin W. Jones and Sydney M. Gronroos for Defendant and Appellant.

Gelb Law and Yisrael Gelb for Plaintiff and Respondent.

———————————

A college student brought a civil action against a private university and third parties for common law tort claims, then sought to stay the university's disciplinary proceedings arising out of the same facts. He argued he would suffer irreparable harm unless the disciplinary proceedings were stayed because: (1) the university would avoid limitations imposed in civil litigation by obtaining evidence in the disciplinary review hearing, where his attorney was not permitted to speak for him, raise objections, or cross-examine witnesses about their testimony, and (2) the university could manufacture factual findings to insulate the organization from liability in the civil action, usurping the function of the trial court. The trial court granted the injunction, and the university appealed. On appeal, we conclude the student has not shown irreparable harm under the circumstances of this case. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Dispute Between Tenants Leads to Disciplinary Proceedings

In August 2023, plaintiff and respondent Emery Ogah was entering his senior year at the University of Southern California (USC) in a progressive degree program. He moved into a room in an off-campus house that had four other tenants, including Nicholas Woltersdorf. The landlord was Orion Housing, LLC.

In August 2023, Ogah and Woltersdorf were involved in an angry dispute about the placement of garbage in the house. Woltersdorf threatened that he had a gun. Ogah contacted USC's

2

Department of Public Safety (DPS). DPS searched Woltersdorf's room and found a prop gun. An incident report was written with the Los Angeles Police Department (LAPD), but DPS took no further action on the grounds that the incident occurred off-campus and Woltersdorf was not enrolled at USC at the time. Ogah reported the incident to Orion as well.

Ogah and Woltersdorf reported escalating incidents and disputes to Orion over several months, culminating in a physical altercation between Ogah and Woltersdorf on February 4, 2024. Both Ogah and Woltersdorf called LAPD. Ogah also contacted DPS. The following day, an incident took place between them during which Ogah threw a glass. Woltersdorf obtained a restraining order against Ogah, which was heard in a different trial court than the proceedings at issue in this appeal; Ogah filed a separate appeal from the restraining order, which is not before us in this matter.

USC has a formal resolution process to determine whether students have violated university policies and, if so, the appropriate discipline. The procedures include providing the student with: written notice of the alleged incident; an opportunity to be present at an administrative review; access to documents and information gathered, including the names of relevant witnesses; a presumption that the student is not responsible unless shown by a preponderance of the evidence; a written explanation of the decision; and an opportunity to appeal the administrative decision for a determination by USC's Vice President of Student Life.

In March 2024, USC notified Ogah that the school received a report from DPS reflecting that he may have violated the

3

university's policies on disorderly conduct and physical harm. USC initiated its administrative review resolution process.

At a meeting with Ogah on August 16, 2024, USC presented Ogah with preliminary findings. Ogah challenged one or more of the determinations of responsibility and proposed outcomes, so the matter was referred to a review panel.

## B.    Complaint and Request for Injunction

That same day, August 16, 2024, Ogah filed an unverified complaint in the instant case against Woltersdorf, Orion, and USC. He alleged causes of action against Woltersdorf for assault, battery, false imprisonment, intentional infliction of emotional distress, intrusion into private affairs, and defamation. Against Orion, Ogah alleged claims for negligence and premises liability based on Orion's control over the environment and its rental practices. The sole cause of action against USC was for negligence, based on allegations that DPS has a special relationship with student residents, including authority to respond to crime in student housing and police powers over student residences, and despite having evidence of Woltersdorf's actions, DPS breached its duty to maintain a secure environment.

In the disciplinary proceedings, USC scheduled a hearing on January 24, 2025, to review the charges against Ogah. One day before the hearing, Ogah filed in his civil action an ex parte petition seeking injunctive relief to prohibit USC from conducting disciplinary hearings until the civil litigation was concluded. Ogah argued he would suffer irreparable harm and a loss of his constitutional rights if he were required to simultaneously participate in USC's disciplinary hearings while litigating his tort

4

claims in civil court. Specifically, Ogah argued irreparable harm would result because: (1) USC's disciplinary process would avoid civil discovery limitations by prohibiting Ogah's attorney from speaking for him or objecting to questions, as he would be entitled to in the civil action; (2) the disciplinary process did not provide for live cross-examination of witnesses; and (3) the disciplinary proceedings were a "sham" to manufacture factual findings to insulate USC in the civil action, usurping the function of the trial court in the civil proceedings.

In addition, Ogah argued that he would likely succeed on the merits of his civil case because it was undisputed that USC knew about the incidents beginning in August 2023, yet took no steps to protect Ogah, and it was also undisputed that Woltersdorf attacked Ogah on February 4, 2024.

In support of his request for injunctive relief, Ogah submitted information received from USC concerning the pending disciplinary allegations, evidence, and proceedings. A DPS crime report dated February 4, 2024, listed Woltersdorf as the suspect and Ogah as the victim. The report stated LAPD was present at the scene when DPS arrived and had advised DPS of mutual combat by both parties. In Woltersdorf's account, in a disagreement over use of the washing machine, Ogah grabbed Woltersdorf's shirt and the parties began wrestling. In Ogah's account, during the disagreement, Woltersdorf got in his face and choked him.

In an email to USC, Woltersdorf stated that Ogah initiated the altercation on February 4, 2024, by punching him in the face. Woltersdorf resorted to physical contact solely in self-defense to gain control of the situation, and the LAPD deemed the incident

to be a "mutual battery" based on the conflicting 911 calls, so did not make an arrest or issue a citation.

Woltersdorf described the February 4, 2024 incident similarly in his application for a temporary restraining order, stating that Ogah had initiated the physical altercation by grabbing him. He added that Ogah threw a large glass cup at Woltersdorf on February 5, 2024, which shattered and caused glass shards to strike Woltersdorf. Woltersdorf retreated to his room, but Ogah used an object to strike Woltersdorf's door and wall, attempting to enter and causing damage to the wall.

Ogah submitted notes taken by an unknown person during an administrative review meeting on June 24, 2024, stating that the parties have different accounts of the incident on February 4, 2024. In Ogah's account, after he held out a palm to tell Woltersdorf to back away, Woltersdorf put him in a chokehold, so Ogah used equal force to free himself and ripped Woltersdorf's shirt. He denied attacking Woltersdorf. Ogah admitted throwing a cup on February 5, 2024, however, to "create distance."

Ogah also submitted notes by an unknown person of a meeting with Woltersdorf, who stated the physical contact began when Ogah pulled a punch or threw a punch at him, and Woltersdorf used a hold to control the situation.

Ogah provided a waiver form with information about USC's disciplinary review process. A student is permitted to have one advisor present at any meeting with staff from USC's Office of Community Expectations to support the student in understanding and navigating the process. To protect everyone's privacy, the advisor is required to sign a confidentiality agreement. No electronic devices are permitted during the process. All communication is with the student. The advisor is

6

not an advocate and may not speak or act on behalf of the student.  To support the student, the advisor may take notes, help the student keep documents organized, and generally ensure the student presents all pertinent facts.  Advisors may assist students in ways that do not disrupt the progress of the review.  No recording or transcription of the meeting may be taken.  The advisor agrees not to copy, distribute, post, alter, or make public any confidential student information which they learn in that role, and that obligation continues after the disciplinary process is completed.  Ogah's attorney signed the form.  Ogah signed the waiver to allow USC to discuss his confidential disciplinary records with his advisor.

## C.     Opposition to Request, Trial Court Ruling, and Appeal

USC opposed the petition on the ground that the trial court lacked jurisdiction to intervene in student disciplinary proceedings, there was no statutory basis for a preliminary injunction under Code of Civil Procedure section 526, Ogah had not exhausted his administrative remedies, and no irreparable harm had been identified.  In fact, granting the injunction would cause significant harm to USC by preventing the university from maintaining the standards of conduct that Ogah agreed to abide by in the student handbook.

USC submitted the declaration of Stephen Rice, the Director of the Office of Community Expectations for USC.  Rice declared that an order precluding USC from conducting disciplinary proceedings against Ogah while the lawsuit was pending would cause USC significant and irreparable harm by

7

depriving USC of its right and responsibility to protect its educational environment by establishing and maintaining standards of conduct for students and addressing allegations of student misconduct in a fair and efficient manner.

On January 24, 2025, without a hearing, the trial court granted the ex parte application. USC filed a timely appeal from the order granting the injunction. On April 25, 2025, this appellate court granted USC's petition for a writ of supersedeas and stayed the injunction.

## DISCUSSION

On appeal, USC contends the trial court lacked jurisdiction to stay USC's disciplinary proceedings because Ogah failed to exhaust administrative and judicial remedies before seeking injunctive relief in the civil action, and no exception to exhaustion applies because Ogah failed to show irreparable harm. We agree that Ogah failed to show he would suffer irreparable harm if the disciplinary proceedings were not stayed during the litigation.

## A.      University Disciplinary Proceedings Generally

Universities have an administrative responsibility to regulate student conduct that threatens or impedes the university's goals to impart learning and advance knowledge. (*Goldberg v. Regents of University of Cal.* (1967) 248 Cal.App.2d 867, 879 (*Goldberg*).) As academic communities, universities can set and enforce standards, incentives, and consequences to achieve their educational objectives. (*Id.* at p. 885.) Other than

8

constitutional limitations, any overlap or relationship between the rules of a university and the laws of the outside community is coincidental.  (*Id.* at p. 886.)  The university's interest in timely resolving disciplinary matters "does not invade any area occupied by state law."  (*Ibid.*)  "[A]ny other approach would be highly impractical and inconsistent with the functions of an educational institution."  (*Ibid.*, fn. omitted.)

When a student's alleged conduct simultaneously violates the university's rules and regulations and California statutes, the university's disciplinary process does not need to wait for the outcome of the other proceedings.  (*Goldberg*, *supra*, 248 Cal.App.2d at p. 885.)  Civil, criminal, and administrative proceedings against an individual, arising out of the same incident, may be conducted singly, concurrently, or successively.  (*People v. Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 67.)

## B.     Judicial Review of Disciplinary Proceedings and Exhaustion of Remedies

A private organization's disciplinary decision is reviewable through a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5, "so long as the private organization was legally required to hold a hearing, take evidence, and make factual determinations in coming to its decision."  (*Boermeester v. Carry* (2023) 15 Cal.5th 72, 85–86 (*Boermeester*).)  The common law doctrine of fair procedure requires a private university to comply with its own procedural rules to exclude or expel an individual.  (*Ibid.*)  Because USC's policies provide for a hearing, submission of evidence, and a factual determination in a written decision, USC's disciplinary

9

proceedings are subject to judicial review through a writ of administrative mandate.  (*Ibid*.)  Such review is limited to "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion."  (Code Civ. Proc. § 1094.5, subd. (b); *Boermeester*, *supra*, 15 Cal.5th at p. 85.)

A "fair trial" in the context of university disciplinary proceedings, as derived from the fair procedure doctrine, requires providing accused students with adequate notice of the charges and a reasonable opportunity to be heard.  (*Boermeester*, *supra*, 15 Cal.5th at pp. 86–90.)  The fair procedure doctrine does not require any specific procedures or a formal hearing with all the accompaniments of a court trial.  (*Ibid*.)  The formal rules about the admissibility of evidence that apply in court do not apply in university disciplinary proceedings.  (*Doe v. Regents of University of California* (2018) 28 Cal.App.5th 44, 56.)  Private universities are not required to provide an opportunity to cross-examine witnesses, directly or indirectly, at a live hearing with the accused student present.  (*Boermeester*, *supra*, 15 Cal.5th at pp. 92–93.)  The university has wide latitude to devise the procedures necessary to provide a student with notice and an opportunity to respond.  (*Id*. at p. 90.)

When a private organization provides an internal remedy, a plaintiff generally must exhaust the internal grievance procedures and seek review through a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5 before filing a legal action challenging the administrative decision.  (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 930; *Life Care Centers of America v. CalOptima* (2005) 133 Cal.App.4th 1169, 1177; *Gupta v. Stanford University* (2004) 124

10

Cal.App.4th 407, 411 (*Gupta*); *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 355–356). Judicial policy dictates that the private organization consider the merits of the matter in the first instance, rather than burden the courts. (*Jonathan Neil & Assoc., Inc. v. Jones, supra*, 33 Cal.4th at p. 930.) "For courts to undertake the task 'routinely in every such case constitutes both an intrusion into the internal affairs of [private associations] and an unwise burden on judicial administration of the courts.' [Citation.]" ' [Citation.]" (*Id.* at pp. 930–931.)

## C. Exception for Irreparable Harm

If a party would be irreparably harmed by allowing an administrative hearing to proceed, the party need not exhaust administrative remedies before seeking injunctive relief. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 296–297; *Mortgage Finance Corp. v. Watson* (1951) 104 Cal.App.2d 640, 641; *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 292.) In this case, however, we conclude Ogah failed to show irreparable harm would result if the disciplinary proceedings were not stayed.[1]

---

[1] Ogah was not required to exhaust administrative remedies before filing the instant civil action against USC and third parties for common law claims arising out of the same facts as USC's disciplinary proceedings. (See, i.e., *Rojo v. Kliger* (1990) 52 Cal.3d 65, 88 [employee must exhaust administrative remedy before filing action under employment statute, but not to file action based on nonstatutory causes of action].) USC's disciplinary process is a separate, parallel proceeding, which does not provide a remedy for negligence or intentional torts by third

### 1. Procedures in Disciplinary Process

Ogah contends he will suffer irreparable harm if the disciplinary proceedings are not stayed because his attorney cannot speak for him in the disciplinary hearings, cannot object to questions or evidence, and cannot conduct any cross-examination of witnesses, whether live or through questions submitted to the review board.  We conclude as a matter of law Ogah has not shown irreparable harm will result from the procedures employed in the disciplinary proceedings.

Ogah is not challenging whether the procedures provide a fair disciplinary proceeding.  Nor could he challenge the sufficiency of the procedures in the disciplinary proceedings without first exhausting his administrative remedies, and no specific procedures are required in the context of private university disciplinary proceedings.  (*Boermeester*, *supra*, 15 Cal.5th at pp. 86–90.)

Rather, Ogah contends he is prejudiced in his civil case even though the procedures that he has identified are common in university disciplinary proceedings.  Ogah has not identified any aspect of USC's disciplinary proceedings that is unique or different from proceedings that courts have already determined

---

parties or by USC.  On appeal, USC contends that Ogah was required to file a writ of mandate under Code of Civil Procedure section 1094.5 to obtain injunctive relief in the disciplinary proceedings, rather than filing an application for injunctive relief in the civil action.  We need not decide this issue, because even assuming Ogah can proceed in the civil action, we conclude Ogah did not establish an exception to the exhaustion requirement for irreparable harm.

may proceed regardless of other legal proceedings. Civil, criminal, and administrative disciplinary proceedings arising from the same facts may be conducted concurrently, and the university's disciplinary process need not wait until the resolution of the trial court proceedings. (*People v. Coit Ranch, Inc.*, *supra*, 204 Cal.App.2d at p. 67; *Goldberg*, *supra*, 248 Cal.App.2d at p. 885.) The university disciplinary process does not cause irreparable harm simply because a party is simultaneously engaged in concurrent civil or criminal proceedings with greater formality and different protections. Ogah has not identified any unique harm in this case that would be different from the other disciplinary proceedings permitted to take place concurrently with civil or criminal actions.

To the extent that Ogah contends USC may obtain evidence through the less formal procedures of the disciplinary process that would otherwise be protected from discovery in the civil action, the potential harm is merely speculative and may be remedied without staying the disciplinary proceedings. No recording of the review hearing in the disciplinary process is permitted, so there will be no transcript available to admit into evidence in the civil action. Ogah may negotiate protective orders in the disciplinary proceedings or object in the civil action to the admission of evidence obtained in the disciplinary proceedings that would not otherwise be available to parties in civil litigation. The potential harm described is not irreparable.

In *Eight Unnamed Physicians v. Medical Executive Com.* (2007) 150 Cal.App.4th 503, 514–515, a group of eight physicians complained they would be irreparably harmed unless their individual medical disciplinary hearings were consolidated because they had no subpoena power and might not be able to

13

marshal witnesses for each of the individual hearings.  The appellate court concluded irreparable harm could not be established based on mere speculation.  "The record does not demonstrate that any crucial witness will in fact be unavailable to any of the Physicians if separate hearings are held, and any potential problems stemming from the lack of subpoena power will be faced equally by both sides in the proceedings.  The mere will-o'-the-wisp potential for prejudice at this stage is insufficient to overcome the requirement of exhaustion of remedies.  As hearing officer Singer noted in his ruling on the consolidation motion, testimony can be preserved on videotape and the procedural problem envisioned by the Physicians is a matter of speculation."

Similarly in this case, because USC's disciplinary hearing has not proceeded to its end, Ogah cannot meet his burden to show information will be gathered in the disciplinary proceeding that would not be available in the civil action or that cannot be remedied for a fair civil proceeding.

### 2.  Findings of Fact

In addition, Ogah contends he will be irreparably harmed if the disciplinary proceedings are not stayed because USC will manufacture factual findings that insulate the university from liability in the civil action, usurping the function of the trial court.  We conclude this potential harm is too speculative as a matter of law to demonstrate irreparable injury.

"Issue preclusion prevents 'relitigation of issues argued and decided in prior proceedings.'  [Citation.]  The threshold requirements for issue preclusion are:  (1) the issue is identical to

14

that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a person who was a party or in privity with a party to the former proceeding.  (*Ibid*.)"  (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481 (*Castillo*).)

"Issue preclusion is not limited to barring relitigation of court findings.  It also 'bars the relitigating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity.'  [Citation.]"  (*Castillo*, *supra*, 92 Cal.App.4th at p. 481.)

For an administrative decision to preclude relitigation of an issue, however, the administrative proceedings must possess "a judicial character."  (*Wassmann v. South Orange County Community College District* (2018) 24 Cal.App.5th 825, 846–847.)  "Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision.  [Citation.]"  (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944 (*Pacific Lumber*).)

In this case, the potential for adverse findings in the disciplinary proceedings to be preclusive in the civil action is simply too speculative and remote to satisfy the exception for irreparable harm.  It is pure speculation at this point whether findings adverse to Ogah will be made in the disciplinary

15

proceedings, and following that, whether a trial court could even conclude USC's disciplinary proceedings possess the requisite judicial character to give the adverse findings preclusive effect in a civil action against USC.  USC's disciplinary process, as proposed to be applied in this case, lacks several characteristics described in *Pacific Lumber* as the hallmarks of a proceeding undertaken in a judicial capacity, including the ability to subpoena and cross-examine witnesses.

Because Ogah failed to establish that irreparable harm would occur if the disciplinary proceedings are not stayed, we need not address whether he showed a likelihood of success on the merits of his claim against USC to support a preliminary injunction in this case.

**DISPOSITION**

The order granting the preliminary injunction is reversed. Appellant University of Southern California is awarded costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

WE CONCUR:

BAKER, Acting, P. J.

KIM (D.), J.

16